[Crim. No. 12753. In Bank. Jan. 29; 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHN ANTHONY GREEN, Defendant and Appellant.

982

## COUNSEL

Cooney & Cooney, Harold Ephraim Hanson and Terrence W. Cooney for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and David B. Stanton, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**MOSK, J.**—Defendant was convicted, in a trial to the court, of the crime of furnishing marijuana to a minor. (Health & Saf. Code, § 11532.) We reversed the judgment on federal constitutional grounds hereinafter discussed. (*People* v. *Green* (1969) 70 Cal.2d 654 [75 Cal.Rptr. 782, 451 P.2d 422].) The People's petition for certiorari was granted, and the United States Supreme Court vacated our decision. (*California* v. *Green* (1970) 399 U.S. 149 [26 L.Ed.2d 489, 90 S.Ct. 1930].) In so doing, the high court raised but did not decide issues which it invited us to resolve (*id.* at pp. 168-170 [26 L.Ed.2d at pp. 502-504]), and remanded the case to this court for further proceedings. We recalled our remittitur, requested and received helpful supplementary briefs, and had the matter reargued.

The chief witness for the prosecution was Melvin Porter, the 17-year-

old minor to whom defendant furnished marijuana. Because of his hostility and the apparent changes in his testimony, the prosecution was allowed to impeach him by the introduction, as prior inconsistent statements, of two other versions of the events previously given by Porter: the first was his testimony at the preliminary hearing in this case, and the second was an oral statement he made to Officer Wade at the juvenile hall after his detention.

■ Evidence Code section 1235 provides in effect that a prior inconsistent statement of a witness is admissible not only to impeach his credibility but also to prove the truth of the matters asserted therein.[1] In the case at bar we noted (70 Cal.2d at p. 658, fn. 2) that Porter's statements were specifically admitted for the latter purpose, and constituted a substantial proportion of the People's evidence against defendant. Developing the line of reasoning we first expounded in *People* v. *Johnson* (1968) 68 Cal.2d 646 [68 Cal.Rptr. 599, 441 P.2d 111], cert. den. (1969) 393 U.S. 1051 [21 L.Ed.2d 693, 89 S.Ct. 679], we held that the admission of Porter's statements for the truth of the matters asserted violated defendant's right of confrontation guaranteed by the Sixth Amendment. (70 Cal.2d at pp. 659-665.) ■ The United States Supreme Court disagreed, and ruled that the admission of a prior inconsistent statement for this purpose does not violate the confrontation clause provided that (1) the statement was made by the declarant in testifying as a witness at the preliminary hearing or (2) the declarant testifies as a witness at the trial, regardless of the circumstances in which the prior statement was made. In each case, the high court stated, the defendant's opportunity to cross-examine the witness in the particular setting is sufficient confrontation to satisfy the requirements of the Sixth Amendment.[2] The mission of the confrontation clause, said the court in *Dutton* v. *Evans* (1970) 400 U.S. 74, 89 [27 L.Ed.2d 213, 227, 91 S.Ct. 210], "is to advance a practical concern for the accuracy of the truth determining process in criminal trials by assuring that 'the trier of fact [has] a satisfactory basis for evaluating the truth of the prior statement.' *California* v. *Green,* 399 U.S., at 161."

## I

In our prior opinion (70 Cal.2d at p. 657, fn. 1) we assumed for purposes of discussion that Porter's preliminary hearing testimony—and the same applies to his extrajudicial statement to Officer Wade—was in fact

[1] Evidence Code section 1235: "Evidence of a statement made by a witness is not made inadmissible by the hearsay rule if the statement is inconsistent with his testimony at the hearing and is offered in compliance with Section 770."

[2] As we explain below (Part II), the high court also stressed that in each case the witness is under oath and his demeanor can be observed by a trier of fact.

"inconsistent" with his testimony at trial. As that evidence would be inadmissible even under state law if it was not inconsistent, it is now necessary to determine whether our assumption is supported by the facts.

According to the excerpts read into the record at trial, Porter testified at the preliminary hearing substantially as follows: about January 5 or 6, 1967, defendant had a conversation with Porter at the latter's house; at that time defendant told Porter he had a kilo of marijuana which he wanted Porter to sell for him; the marijuana was packaged in 29 "Baggies" (i.e., small, transparent plastic bags) inside a large shopping bag; defendant told Porter where the shopping bag was hidden at his father's house; defendant then directed Porter to go to that location and get the bag, and Porter did so the same night. In his extrajudicial statement to Officer Wade, Porter recounted that one morning between January 1 and 10, 1967, defendant called him on the phone and told him he had a kilo of "stuff" or "grass"[3] which he wanted to leave at Porter's house; Porter replied he could bring it over later in the day; defendant did so, arriving with a shopping bag containing 29 plastic bags of a green, leafy material which Porter recognized as marijuana.

Although the two prior statements were thus inconsistent with each other in certain respects, the issue is whether they were inconsistent with Porter's testimony at the trial. In that testimony Porter admitted he had known defendant for some four and a half years; sometime between January 1 and 10, 1967, defendant called him on the phone and said he had some "stuff" that he wanted Porter to sell; Porter understood "stuff" to mean "grass or pot, marijuana"; and Porter agreed to sell the marijuana for defendant.

At this point in the proceedings, however, Porter's testimony suddenly became curiously vague. When asked what happened after the phone conversation, Porter claimed he was no longer "absolutely sure" that defendant had come to his house later that day, adding, "I think, but I'm not positive." Asked if defendant brought anything to the house, Porter replied, "Not that I recall." To explain this apparent lapse of memory, Porter said he had taken LSD about 20 minutes before defendant phoned him.

Porter's preliminary hearing testimony, summarized above, was then read to him. Once again he equivocated, claiming "I can't absolutely say" that after making the phone call defendant came to his house and brought him anything. Nevertheless, Porter then admitted that the same night he had in his possession a shopping bag containing 29 "Baggies" of mari-

---

[3]Porter stated to Officer Wade that "stuff" or "grass" meant marijuana.

juana, although he alleged he could not recall "how I actually did get them."[4]

When asked if someone had told him where to find the shopping bag, Porter conceded, "I suppose someone did tell me," but reiterated that "I can't say absolutely" who it was. When asked whether he obtained the bag at the house of defendant's father, he replied, "I might have. You know, I knew John [i.e., defendant] called, and I mean. . . ." He was interrupted by an objection which was overruled. The prosecutor then asked when was the next time he saw defendant after the phone call, and Porter replied, "I think I might have seen him that day, but I couldn't be positive."

Additional preliminary hearing testimony by Porter was then read, and he grudgingly agreed that it refreshed his recollection. The prosecutor then asked again where he obtained the shopping bag of marijuana, and Porter answered, "Well, I guess I got it from [defendant's] back yard." In the same reluctant terms Porter agreed that it was defendant who pointed out the location of the marijuana, that Porter received money for selling some of the marijuana, and that he gave the money to defendant.

On cross-examination defense counsel sought in effect to "rehabilitate" Porter's asserted lapse of memory by inquiring whether the reading of the preliminary hearing testimony refreshed the witness' recollection as to that testimony or as to the actual event. Porter replied, "Mostly my testimony, I guess." When counsel asked if he was still unsure of what happened after defendant's phone call, Porter claimed that "I'm not positive now." Counsel also caused Porter to testify that taking LSD made him hallucinate and that the effect lasts from 12 to 14 hours; yet when pressed on the point by the court, Porter also claimed that apart from the LSD "I have always had a not very good memory."

A dispassionate appraisal of the foregoing testimony, which we previously characterized as "markedly evasive and uncooperative" (70 Cal.2d at p. 657), leads to but one conclusion: the trial court could properly disbelieve Porter's claim that he no longer remembered how the marijuana came into his possession. Porter's reluctance to testify against defendant was apparent from the outset, as it was necessary to repeatedly warn him to make his voice more audible. When he reached the critical point in his testimony—i.e., whether defendant did in fact give him the marijuana as

[4]He recognized the contents to be marijuana, and smoked some of it. Thereafter he sold a few of the bags, and the rest were assertedly stolen from his closet where he had hidden them.

he agreed to do—Porter first hesitated by saying, "I just messed around for a while. . . . Well, you know, I mean he didn't come over right away." Finally Porter unmasked his apparent motive when he protested, "Like I already said, I mean I've got a conscience, and I don't want to. . . ." His voice trailed off, and he was told once again to speak up.

Thereafter Porter adopted a technique of refraining from flatly denying that defendant either brought the marijuana to his house or pointed out its hiding place to him; instead, the witness evaded all questions to that effect with such equivocations as "I'm not absolutely sure" and "I'm not positive." As the trial court indicated, these evasions are, in the circumstances, inherently incredible. Porter admitted in open court that he "clearly remembered" every event *before* his acquisition of the marijuana, including the highly incriminating phone call by defendant, and every event *after* that acquisition, including his possession the same day of the shopping bag containing precisely 29 "Baggies" of marijuana, his consumption of some, his sale of others, and the alleged theft of the remainder. His claim to have conveniently forgotten only the actual transfer of the contraband was not believed by the trial judge, who repeatedly castigated him for his "highly unsatisfactory performance" on the stand.[5]

■ In normal circumstances, the testimony of a witness that he does not remember an event is not "inconsistent" with a prior statement by him describing that event. (*People* v. *Sam* (1969) 71 Cal.2d 194, 208-210 [77 Cal.Rptr. 804, 454 P.2d 700], and cases cited.) But justice will not be promoted by a ritualistic invocation of this rule of evidence. Inconsistency in effect, rather than contradiction in express terms, is the test for admitting a witness' prior statement (*Fibreboard Paper Products Corp.* v. *East Bay Union of Machinists* (1964) 227 Cal.App.2d 675, 699 [39 Cal.Rptr. 64]), and the same principle governs the case of the forgetful witness. ■ In contrast to *Sam,* in which the witness had no recollection whatever of the prior incident, here Porter admittedly remembered the events both leading up to and following the crucial moment when the marijuana came into his possession, and as to that moment his testimony was equivocal.[6] For the

[5]For example, the court expressed deep concern over the probative value of the testimony of this youth "who comes in here and defies the Court and counsel with his nonresponsive, insolent answers." In explaining his decision to find defendant guilty, the court again emphasized "the small probability attached to the veracity of this young renegade. . . ."

[6]In further contrast to *Sam,* there a period of two years elapsed between the prior incident and the trial, and the witness was under no notice that he would ever be called upon to testify on the subject; here the delay was only two months, and even during that brief interval the facts must have been kept uppermost in Porter's mind by such events as the continuing police investigation, his own arrest and detention, his appearance at defendant's preliminary hearing, and the preparation for this trial.

reasons stated above, we conclude that Porter's deliberate evasion of the latter point in his trial testimony must be deemed to constitute an implied denial that defendant did in fact furnish him with the marijuana as charged. His testimony was thus materially inconsistent with his preliminary hearing testimony and his extrajudicial declaration to Officer Wade, in both of which he specifically named defendant as his supplier. Accordingly, the two prior statements of this witness were properly admitted pursuant to Evidence Code section 1235.

## II

In its opinion (399 U.S. at pp. 168-170 [26 L.Ed.2d at pp. 502-504]) the United States Supreme Court expressly defers to our resolution of the issue whether Porter's "apparent lapse of memory" so affected defendant's opportunity to cross-examine him at trial that the admission of the witness' prior statement to Officer Wade violated defendant's right of confrontation under the Sixth Amendment.[7]

The opinion of the high court also provides us with the appropriate guidelines to apply to the facts bearing on this issue. The court pointed out that the three-fold purpose of confrontation is (1) to insure reliability by means of the oath, (2) to expose the witness to the probe of cross-examination, and (3) to permit the trier of fact to weigh his demeanor. (*Id.* at p. 158 [26 L.Ed.2d at p. 497].) As to the first of these functions the court observed (at pp. 158-159 [26 L.Ed.2d at p. 497]) that "If the witness admits the prior statement is his, or if there is other evidence to show the statement is his, the danger of faulty reproduction is negligible and the jury can be confident that it has before it two conflicting statements by the same witness. Thus, as far as the oath is concerned, the witness must now affirm, deny, or qualify the truth of the prior statement under the penalty of perjury; . . ." Here Porter was recalled for further cross-examination after Officer Wade had testified to his extrajudicial statement. When asked, under oath, if he gave a statement to the officer on the subject of acquiring and selling marijuana, Porter replied, "Yes, I did." Counsel then inquired as to the contents of the statement, and Porter admitted that "it had to do with buying it from John [i.e., defendant], yes, sir." Although he hastily added—reverting to his technique of deliberate equivocation—that "I mean, I couldn't say exactly what went on or not," he nevertheless grudgingly conceded making the two principal

[7]A similar question was not asked as to Porter's prior testimony at the preliminary hearing because of the high court's ruling that the confrontation which took place in that proceeding satisfied the Sixth Amendment regardless of subsequent events at the trial. (*Id.* at pp. 165-168 [26 L.Ed.2d at pp. 501-502].)

factual assertions reported in the statement.[8] In the words of the United States Supreme Court, the danger of faulty reproduction was therefore negligible and the trier of fact could be confident that it had before it conflicting statements of the same witness.

Turning to the second function of confrontation in this context—cross-examination of the declarant—we observe that defense counsel asked Porter only one question on the topic: "Now, at the time that you made this statement to the officer, did you believe that you were telling the truth?" Porter replied, "Yes, sir," and counsel accepted the answer. It is true that in the common situation envisaged by the United States Supreme Court (399 U.S. at pp. 159-160 [26 L.Ed.2d at pp. 497-498]) the witness takes the occasion to repudiate or qualify his prior inconsistent statement, whereas here Porter reaffirmed it. But in either event it is the cross-examiner's task to "rehabilitate" the now-friendly witness by providing him with "the usual suggested explanations for the inaccuracy of his prior statement, such as faulty perception or undue haste in recounting the event." (*Id.* at p. 160 [26 L.Ed.2d at p. 498].) In the present case, however, defense counsel made no attempt to explore the inconsistency thus laid bare. Yet Porter was on the stand and under oath, and had just admitted making the statement in question. Defendant thus had the opportunity to cross-examine him, but in effect declined to do so. ▮ Whether or not a witness is actually cross-examined, the fact the defendant has an adequate *opportunity* to carry out such an inquiry satisfies the confrontation clause. (*Pointer* v. *Texas* (1965) 380 U.S. 400, 407 [13 L.Ed.2d 923, 928, 85 S.Ct. 1065].)[9]

▮ Finally, the function of confrontation in subjecting the witness' demeanor to the scrutiny of the trier of fact was undoubtedly served in the case at bar. Porter's manner of testifying on the subject of his prior statement to Officer Wade was, we have seen, no different from his behavior on the stand throughout the trial; and as noted above (*ante*, fn. 5, and accompanying text), that performance was closely observed and carefully weighed by the trial court.

---

[8]"Q. Well, do you remember telling the officer that Mr. Green phoned you up and told you that he, Mr. Green, had some marijuana and wanted to bring it over and leave it at your house? A. I might have said that, yeah.

"Q. Do you remember telling him that Mr. John Green had brought the marijuana over to your house that day, the day that you had the conversation with Mr. Green? A. I think—let's see. Yes, I think so."

[9]Moreover, as the United States Supreme Court explains, "The most successful cross-examination at the time the prior statement was made could hardly hope to accomplish more than has already been accomplished by the fact that the witness is now telling a different, inconsistent story, and—in this case—one that is favorable to the defendant." (*Id.* at p. 159 [26 L.Ed.2d at p. 497].)

The prescribed purposes of the confrontation clause being thus fulfilled, we conclude that Porter's statement to Officer Wade was properly admitted insofar as the Sixth Amendment is concerned.

### III

■■ Defendant's remaining three contentions, which we found unnecessary to reach in our prior opinion (70 Cal.2d at p. 666), are without merit. The evidence is not insufficient as a matter of law to support the finding of guilt: despite certain inconsistencies between Porter's preliminary hearing testimony and his declaration to Officer Wade, both statements unequivocally identify defendant as his supplier of marijuana. Far from being themselves inherently incredible, the statements depict, as characterized by the Attorney General, "a dismally common story" of the exploitation of youth for the purpose of peddling contraband drugs. Even discounting Porter's low level of credibility, the trial court could properly conclude from all the evidence that "I am satisfied myself that Porter dealt with [defendant], used it [i.e., marijuana], and sold it. . . ." Secondly, there is no authority for defendant's claim that it was "incumbent upon the prosecution" to introduce Porter's statement to Officer Wade at the preliminary hearing, or that failure to do so constituted "intentional suppression of material evidence." Lastly, defendant's charge of improper remarks by the prosecutor is devoid of substance.

The judgment (order granting probation) is affirmed.

Wright, C. J., McComb, J., Peters, J., Tobriner, J., Burke, J., and Sullivan, J., concurred.