[Crim. No. 18575. Second Dist., Div. One. Sept. 16, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSEPH EDWARD BARRANDAY, Defendant and Appellant.

**COUNSEL**

Robert C. Kent, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, William E. James, Assistant Attorney General, and Ronald M. Weiskopf, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**LILLIE, J.**—Defendant and one Rodriguez were jointly charged with robbery (Pen. Code, § 211), the information further alleging that in the course thereof, and with intent so to do, they inflicted great bodily injury on the victim (Robert Pete Ruelas). A jury convicted defendant of robbery and

fixed the same in the first degree; a new trial was later denied. He appeals from the judgment.

The victim was robbed and shot in the early morning (3 a.m.) of May 17, 1969, shortly after he had escorted Pamela Padilla to her home after an evening of "nightclubbing." After taking the victim's wallet containing $120 in bills, the assailant ran to a car on the other side of the street which immediately left the scene, it was similar, according to Miss Padilla, to that belonging to her ex-boyfriend, Rodriguez. Upon release from the hospital, and acting on information received from Miss Padilla, Ruelas (the victim) proceeded to a certain intersection in the general neighborhood; there he located a car which he recognized as the one involved in the robbery. Its license number was given to the police, and both defendant and Rodriguez were arrested the following day. Defendant, it appears, was living with the sister of Rodriguez (Rachel Sanchez) and her two children. Prior to the arrest, Ruelas had been shown some photographs from which he was able to identify defendant—the victim drew in a mustache on the identifying photograph similar to the one his assailant wore on the date in question.

Mistaken identity was part of the defense interposed by defendant at trial in addition to alibi testimony of certain witnesses who placed him at a location different from that of the scene of the crime. ■ The adverse resolution of these issues is not challenged on appeal; it is contended, however, that the trial court erred prejudicially in allowing the prosecution to impeach Rodriguez through prior statements made by him to a police officer (Lieutenant Brown), which impeachment involved an out-of-court confession by Rodriguez implicating defendant in the commission of the crime. Cited is *People* v. *Spencer,* 71 Cal.2d 933, 939 [80 Cal.Rptr. 99, 458 P.2d 43], wherein it was stated (referring to a previous ruling in *People* v. *Johnson,* 68 Cal.2d 646 [68 Cal.Rptr. 599, 441 P.2d 111]) that "prior inconsistent statements of a witness, while admissible for impeachment purposes, cannot be given substantive use in a criminal trial because to do so would deprive the defendant of his constitutional right of confrontation. . . ." Also mentioned in *Spencer* for the above proposition is *People* v. *Green,* 70 Cal.2d 654 [75 Cal.Rptr. 782, 451 P.2d 422], decided one year after *Johnson.*

Subsequently, in *California* v. *Green,* 399 U.S. 149 [26 L.Ed.2d 489, 90 S.Ct. 1930], no mention of which is made by appellant, the confrontation analysis articulated in both *Johnson* and *Green* was rejected; thus, the United States Supreme Court there held that when a witness can be fully and effectively cross-examined at trial, the confrontation clause permits the substantive use of any of his prior statements, whether consistent or inconsistent, and whether made in or out of court (399 U.S. at pp. 167-168

[26 L.Ed.2d at p. 502]). Such determinations govern appellant's claims here asserted;[1] since there are no other assignments of error, the judgment must be affirmed.

Defendant was arrested about 12 hours after his identification by the victim. A loaded .22 pistol was found in the pocket of a coat hanging in the bedroom closet of his residence; one cartridge had been expended, and there was a box of .22 bullets on the closet floor. Qualified testimony established that the bullet removed from the victim's leg had been fired from the pistol found in the closet. Also found by one of the arresting officers in defendant's bedroom (between a mattress and box springs) was a wallet with defendant's identification and containing $75 in bills.

When Rodriguez was arrested (May 22), he was taken to the East Los Angeles station where a deputy sheriff advised him of his *Miranda* rights. The next morning he was questioned by Deputy Sheriff Roy Brown; Rodriguez stated that he had gone out in his car with defendant and the latter's date on the night of May 16 to a wedding; after the wedding, enroute to a hot dog stand, they passed Miss Padilla's house and he saw a man walking down the steps; curious to learn the man's identity, Rodriguez made a U-turn; immediately after doing so, defendant jumped out of the car and went over to the car that the third man had entered; after a minute or two Rodriguez heard a shot, and defendant came back to the Rodriguez car and began thumbing through the contents of what seemed to be a man's wallet; these contents were discarded as the Rodriguez car drove away.

Upon cross-examination of Ruelas, the defense endeavored to establish that his identification of defendant was aided by Miss Padilla's statements casting suspicion on the owner of the car involved (Rodriguez) which, in turn, eventually implicated defendant who "ran around with her ex-boyfriend." Following such cross-examination, Miss Padilla was called and testified that Rodriguez phoned her the week after the incident; that she told him she was upset at seeing his car, and "I told him the next time I did see him would be in the courtroom, and he said it was fine, and that if I would bring him to court, he would have a witness."

Rodriguez was then called as a prosecution witness. Previously he had successfully moved for a dismissal of the information (Pen. Code, § 995) and, additionally, had been granted immunity by the court on motion of the People. The above notwithstanding, he reneged on an earlier promise to the deputy district attorney that he would testify consistent with his earlier statements to Deputy Sheriff Brown. Thus, he categorically denied either go-

---

[1]Also controlling is the second *Green* case, 3 Cal.3d 981 [92 Cal.Rptr. 494, 479 P.2d 998], on remand following *California* v. *Green, supra.*

ing by the Padilla home on the morning of the shooting or later calling Miss Padilla about the incident. Further, he specifically denied taking defendant to the Padilla neighborhood at the time of the shooting, that defendant ever got out of his car or that he ever heard a shot. While recalling that he talked to somebody at the sheriff's office, he said he did not remember his name or recall what he looked like. Although the incidents occurred about nine months earlier, on *voir dire* by defense counsel Rodriguez stated that he could not recall any of the events of the evening (or early morning); defense counsel then argued that such non-recollection did not create an inconsistency with former statements and that, all the above circumstances being considered, impeachment testimony should not be permitted. Defendant's objection having been overruled, impeachment testimony was offered by Deputy Sheriff Brown; prior thereto, the court instructed the jury that the tenor of such testimony "will be not for the truth of what is stated, but to impeach the prior witness who has just left the stand. It is not for the truth of what may or may not be testified by this particular witness."

In the present case a reversal would not be warranted if the admission of Rodriguez's former statement for impeachment purposes accorded with the rule of the second *Green* case regarding the use of "inconsistent statements" as well as the federal "cross-examination/confrontation" test (*California* v. *Green, supra*). With respect to the latter, the record reveals that the impeaching witness (Brown) was carefully cross-examined by defendant's counsel with an end toward baring inconsistencies in his recital of relevant events and otherwise discrediting his testimony. In *Dutton* v. *Evans,* 400 U.S. 74 [27 L.Ed.2d 213, 91 S.Ct. 210], wherein reference was made to *California* v. *Green,* the court declared that "From the viewpoint of the Confrontation Clause, a witness under oath, subject to cross-examination, and whose demeanor can be observed by the trier of fact, is a reliable informant not only as to what he has seen but also as to what he has heard." (27 L.Ed.2d at p. 226.) It bears emphasis that the vitality of the prosecution's case was seriously imperiled by the surprise testimony of Rodriguez, casting doubt (as it did) on the validity of Miss Padilla's statements about his telephone call and, also, the victim's identification of defendant as the perpetrator of the crime; accordingly impeachment of such testimony was necessary to revitalize the People's standing in the view of the trier of fact, thus distinguishing the case from *People* v. *Woodberry,* 10 Cal.App.3d 695, 704 [89 Cal.Rptr. 330], where no useful purpose was served by impeaching the declarant.

Too, it now seems to be immaterial whether the declarant (sought to be

impeached) be a mere witness or a codefendant[2]—appellant relies on cases, including *In re Whitehorn,* 1 Cal.3d 504 [82 Cal.Rptr. 609, 462 P.2d 361], which quoted from *Bruton* v. *Evans,* 391 U.S. 123 [20 L.Ed.2d 476, 88 S.Ct. 1620], limiting the use of a codefendant's statements which implicate a defendant in a criminal trial. Subsequently, however, in *Nelson* v. *O'Neil,* 402 U.S. 622 [29 L.Ed.2d 222, 91 S.Ct. 1723], the court pointed out that "The Constitution as construed in Bruton . . . is violated *only* where the out-of-court hearsay statement is that of a declarant who is unavailable at the trial for 'full and effective' cross-examination." (29 L.Ed.2d at p. 227.) Accordingly, in the decision's concluding paragraph, there are these statements: "We conclude that where a codefendant takes the stand in his own defense, denies making an alleged out-of-court statement implicating the defendant, and proceeds to testify favorably to the defendant concerning the underlying facts, the defendant has been denied no rights protected by the Sixth and Fourteenth Amendments." (29 L.Ed.2d at p. 228.)

In view of the foregoing events and the controlling principles above set forth, appellant was not denied the so-called federal "cross-examination/ confrontation" right by the admission of Rodriguez' former statement for impeachment purposes.

Under the second *Green* case (3 Cal.3d 981 [92 Cal.Rptr. 494, 479 P.2d 998]), there was also no denial of defendant's right to protection from impeaching testimony when the declarant's prior statements are not truly "inconsistent." Preliminary, obedient to the mandate of *California* v. *Green,* our Supreme Court recognized that "[T]he admission of a prior inconsistent statement for [a substantive] purpose does not violate the confrontation clause provided that . . . the declarant testifies as a witness at the trial, regardless of the circumstances in which the prior statement was made. In each case . . . the defendant's opportunity to cross-examine the witness in the particular setting is sufficient confrontation to satisfy the requirements of the Sixth Amendment. . . ." (*Supra,* p. 985.) Further, obedient to the remand of *California* v. *Green,* the second *Green* case then undertook to determine whether the declarant's statements were in fact "inconsistent" and warranted the use of impeaching testimony: specifically, whether the witness's lapse of memory could create an inconsistent statement siutation and, also, whether such memory lapse "so affected defendant's opportunity to cross-examine him at trial that the admission of the witness's prior statement to Officer Wade violated defendant's right of confrontation under the Sixth

---

[2]Defendant claims that Rodriguez was "not quite a co-defendant" since he had been granted immunity—"Rodriguez's status is somewhere between a mere witness and a co-defendant and as such, Appellant is entitled to the more favorable of these positions."

Amendment." (3 Cal.3d at p. 989.) The court found against defendant's claims in each instance.

The record in the instant case discloses trial circumstances similar to those resulting in the adverse determinations reached in *Green.* As in *Green,* defense counsel asked only one question of Rodriguez, namely, whether he recalled any of the events of the night of May 16th or the early morning hours of May 17th, to which Rodriguez answered, "No, I don't"; thus, as stated in *Green,* "defense counsel made no attempt to explore the inconsistency thus laid bare." (*Supra,* p. 990.) In addition to categorical statements in his testimony which were in fact inconsistent with his prior statements, Rodriguez on several occasions exhibited a lapse of memory similar to that which confronted the court in *Green.* If the trial court disbelieved such purported denials of recollection, such determination is sanctioned by *Green* which characterized similar testimony as "deliberate evasion" of the answers sought to be elicited. Further discussion of the similarities between the two cases would serve no useful purpose, it being sufficient to note and declare that the prior statements of Rodriguez were properly admitted pursuant to Evidence Code section 1235.[3]

■ Wholly apart from the admission of prior Rodriguez statements for impeachment purposes, there was other evidence, independent and effective, raising inferences reasonably pointing to appellant's guilt. First, defendant apparently attempted to hide Ruelas' wallet containing $75 in between the mattress and box springs in the bedroom of his residence; second, the bullet taken from the victim's leg was fired from a gun found in a coat hanging in the closet of defendant's bedroom. Additionally, defendant was identified by the victim after the latter was shown some 15 photographs by one of the officers. It is a familiar rule that "In order to sustain a conviction the identification of the defendant need not be positive. [Citations.] Testimony that a defendant 'resembles' the robber [citation] or 'looks like the same man' [citation] has been held sufficient. The testimony of one witness is sufficient to support a verdict if such testimony is not inherently incredible. [Citation.] The sufficiency of the evidence of identification is generally a question for the trier of the facts. [Citation.]" (*People* v. *Wiest,* 205 Cal.App.2d 43, 45 [22 Cal.Rptr. 846].)

The judgment is affirmed.

Wood, P. J., and Thompson, J., concurred.

---

[3] "Evidence of a statement made by a witness is not made inadmissible by the hearsay rule if the statement is inconsistent with his testimony at the hearing and is offered in compliance with Section 770."