46 Cal.App.3d 260 (1975)
120 Cal. Rptr. 181
THE PEOPLE, Plaintiff and Respondent,
v.
LUGENE CARTER, Defendant and Appellant.
Docket No. 25326.
Court of Appeals of California, Second District, Division Five.
March 19, 1975.
*262 COUNSEL
James L. McIntosh, under appointment by the Court of Appeal, for Defendant and Appellant.
Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Norman H. Sokolow and James H. Kline, Deputy Attorneys General, for Plaintiff and Respondent.
OPINION
STEPHENS, J.
The appeal in this case follows a conviction and sentence for robbery in the first degree. (Pen. Code, §§ 211 and 211a.)
The main thrust of the appeal is that reversal is required, based upon evidence not adduced at trial; that by virtue of the failure to interview a witness and thereafter to exercise a reasonable tactical decision as to whether to call said person to testify, the trial was relegated to a farce and a sham. (People v. Ibarra, 60 Cal.2d 460, 464 [34 Cal. Rptr. 863, 386 P.2d 487].)
The issue was not raised before the trial court by way of motion for new trial, hence determination is properly by way of writ of habeas corpus and not by direct appeal.[1] (People v. Pena, 25 Cal. App.3d 414, 423 [101 Cal. Rptr. 804].)
(1) There is another contention, however, which has merit and necessitates reversal, i.e., that "The trial court erred in admitting the testimony of Alex Freedland to a dissimilar robbery from which he could not identify appellant." The testimony relative to the uncharged crime was admitted under the theory of "common plan, scheme and design, *263 and further [to] identify" defendant. We conclude that the evidence of the uncharged offense was reversible error. Even were we to concede similarity of the modus operandi (which we do not), in the instant case defendant was identified by the victim of the charged offense (Swislow) as having, on August 25, 1973, robbed him and having threatened him with a knife at the time of the crime. The victim also identified defendant as the perpetrator of the crime when shown four photographs, each of a different person, one of which portrayed defendant.
Mr. Alex Freedland testified as to a robbery which took place on August 26, 1973 in which he was the victim, and that the robbery was accomplished with the use of a gun. "A day or so after" the robbery, Freedland was shown some photographs for the purpose of possibly identifying the perpetrator of the robbery. Freedland "recognized the black turtleneck sweater" on one of the depicted persons, but did not recognize the face.[2] On the basis of this recognition of clothing only, Freedland told the investigating officers that this was a picture of the person who had robbed him. Freedland also testified that in none of the other pictures exhibited to him were the persons wearing turtleneck sweaters. The witness was not asked to make an in court identification.
Officer Lynn Franklin testified that he had exhibited six or seven photos to Freedland and that Freedland "picked out the picture of the defendant, stating `This is one of the persons who robbed me' and `I am sure this is one of the persons.'"
The defense was one of alibi, and therefore any evidence bearing upon the identity of the Swislow robber was of importance. It was to provide additional evidence of identity that the Freedland testimony was admitted. It is conceded that, in the proper case, a defendant's commission of another (uncharged) crime is admissible to prove a material fact such as identity, motive, or intent, and modus operandi common to both the charged and uncharged crimes. (Evid. Code, § 1101, subd. (b); People v. Enos, 34 Cal. App.3d 25, 35 [109 Cal. Rptr. 876].) However, the Freedland testimony at the time of trial failed to identify the perpetrator of the uncharged crime. In fact (as we noted), Freedland was not asked if he could identify the perpetrator as a person in the courtroom at that time.[3] Instead, the prosecution was content to rely *264 upon what it considers to be "impeaching" testimony produced by Officer Franklin. The prosecution relies upon the principle that a contradictory statement may be admitted both for impeachment purposes and to prove the facts therein related (Evid. Code, § 1235; People v. Strickland, 11 Cal.3d 946, 954 [114 Cal. Rptr. 632, 523 P.2d 672]) and for the propriety of the admission of the evidence.
Defendant argues that the prior statement by Freedland (as related by Officer Franklin) was not inconsistent with the in court testimony of Freedland. We agree.
Courts in California have consistently adhered to the rule that the "`The right of impeachment does not exist where the witness states he has no recollection of the fact concerning which he is examined.' This is not only the rule in California, but according to Wigmore, it is the general English and American rule confirmed by similar holdings in other jurisdictions." (People v. Sam, 71 Cal.2d 194 [77 Cal. Rptr. 804, 454 P.2d 700].) (Citations and fns. omitted.)
The single exception to the general sweep of this rule was carved out in People v. Green, 3 Cal.3d 981 [92 Cal. Rptr. 494, 479 P.2d 998], where the California Supreme Court held a witness' deliberate evasion of the question of whether or not the defendant had transferred marijuana to the witness amounted to an "implied denial that defendant did in fact furnish him with the marijuana as charged." (Id., at p. 989.) However, the Green court reaffirmed the general rule that "the testimony of a witness that he does not remember an event is not `inconsistent' with a prior statement by him describing that event." (Id., at p. 988.) Any doubts about the extent to which Green displaced the general rule were resolved in People v. Parks, 4 Cal.3d 955 [95 Cal. Rptr. 193, 485 P.2d 257]. There the court held that a witness' prior report about a conversation with the defendant could not be admitted into evidence when, at trial, the witness could not recall what was said. The court found that her lapse of memory "[was not] inconsistent with her original remarks.... It was not established that she was deliberately evasive or that her asserted lapse of memory was untrue." (Id., at p. 960, citing People v. Green, 3 Cal.3d, supra, at p. 987.) (See: People v. Petersen, 23 Cal. App.3d 883, 892 [100 Cal. Rptr. 590]; People v. Wheeler, 23 Cal. App.3d 290, 309 [100 Cal. Rptr. 198]; People v. Barranday, 20 Cal. App.3d 16, 22 [97 Cal. Rptr. 345]; People v. Jackson, 3 Cal. App.3d 921, 925, fn. 2 [83 Cal. Rptr. 829].)
In this case, according to his testimony, Freedland never identified *265 defendant; he identified a turtleneck sweater. This explanation at time of trial was entirely consistent with his identification of the photo to Officer Franklin. While the facts of the Freedland robbery were admitted to establish the identity of the Swislow robber, no identification of the perpetrator of the Freedland crime resulted. Certainly, the facts of uncharged offenses cannot be admitted unless the identity of the perpetrator is clearly established. (See People v. Banks, 2 Cal.3d 127, 138 [84 Cal. Rptr. 367, 465 P.2d 263].) This error of admission could not but have adversely affected defendant's trial. (People v. Watson, 46 Cal.2d 818, 835-837 [299 P.2d 243].)
(2a) There is another reason why this case should be reversed, though we do not rely upon it to support our decision because it is, at best, but tangentially raised in the briefs and before the trial court.[4] Freedland's "identification" of defendant, if it can be so described, occurred by way of a photographic lineup. (3) Such means of identification is proper where the procedure is not unnecessarily suggestive and conducive to mistaken identification. (People v. Lawrence, 4 Cal.3d 273, 280 [93 Cal. Rptr. 204, 481 P.2d 212].) The totality of the circumstances surrounding the lineup is determinative of its fairness. (People v. Harris, 274 Cal. App.2d 826 [79 Cal. Rptr. 352].) Where an identification procedure is shown to be constitutionally infirm, the prosecution must then establish by clear and convincing proof that the in court identification is not tainted. (People v. Williams, 9 Cal.3d 24, 37 [106 Cal. Rptr. 622, 506 P.2d 998].)
(2b) The instant case differs from People v. Hill, 12 Cal.3d 731, 766 [117 Cal. Rptr. 393, 528 P.2d 1], where, of the group of pictures shown to the witness, defendant was the only one depicted wearing a beard and the witness had stated that his assailant "either wore a mask or had a beard, the witness nevertheless made his identification solely from the features of eyes, cheeks, nose, and hairline." Here, the sole item of identification was the turtleneck sweater, and only one picture of the six or seven displayed showed a person so dressed. Also, no identification of defendant at the trial was even attempted so far as the Freedland robbery was concerned.[5] The cases of People v. McDaniels, 25 *266 Cal. App.3d 708 [102 Cal. Rptr. 444] and People v. Harris, 18 Cal. App.3d 1 [95 Cal. Rptr. 468] are likewise distinguishable from the instant case for the same reasons expressed above. The purport of each of those cases, however, supports the conclusion we here reach. The statements contained in People v. Gould, 54 Cal.2d 621, 631 [7 Cal. Rptr. 273, 354 P.2d 865] are particularly apropos here. There, the court stated: "The only evidence tending to connect Marudas with the burglary, therefore, was the evidence of Mrs. Fenwick's extrajudicial identification of his photograph.
"An extrajudicial identification that cannot be confirmed by an identification at the trial is insufficient to sustain a conviction in the absence of other evidence tending to connect the defendant with the crime. (See Reamer v. United States, 229 F.2d 884, 886.) Moreover, the probative value of an identification depends on the circumstances under which it was made. Mrs. Fenwick merely selected one of a small group of photographs. The small size of the group increased the danger of suggestion. (See 3 Wigmore, Evidence (3d ed. 1940), § 786a, p. 164.) Identification from a still photograph is substantially less reliable than identification of an individual seen in person. (See id., pp. 165-166.) It becomes particularly suspect when, as in the present case, the witness subsequently fails to identify the subject of the photograph when seen in person and there is no other evidence tending to identify him."
In concluding that the photographic identification resulted in a denial of due process (Simmons v. United States, 390 U.S. 377 [19 L.Ed.2d 1247, 88 S.Ct. 967]), we recognize that we do not adopt the finding on this subject made by the trial judge. Since the sole evidentiary consideration *267 is the group of photographs, we may make our independent determination. (People v. Lawrence, 4 Cal.3d 273, 279 [93 Cal. Rptr. 204, 481 P.2d 212].)
The judgment is reversed.
Kaus, P.J., and Hastings, J., concurred.
A petition for a rehearing was denied April 14, 1975, and respondent's petition for a hearing by the Supreme Court was denied May 14, 1975.
NOTES
[1] A petition for habeas corpus also has been lodged with us by defendant which we have this day disposed of (dismissed as moot) in a separate opinion. (Unpublished opn. (2 Crim. 26129).)
[2] Swislow described his assailant as having worn a black turtleneck sweater. A fair inference is that Freedland had similarly described his assailant.
[3] Since such a question would have produced stronger evidence than that produced on the subject, we may infer that the response to such question would not have been favorable to the prosecution.
[4] While defendant did not specifically object to the unfair photographic lineup as presented to Freedland at trial, we believe that this issue is included within the issue of incompetency of counsel which defendant has raised. There certainly could not have been a tactical reason for having failed to raise this issue at trial. (Witkin. Cal. Evidence (2d ed. 1974 Supp.) § 905 A-2, pp. 585-587.)
[5] We find support for our conclusion, albeit by negative expression, in People v. Lawrence, supra (at p. 280): "... We are of the opinion that the photographic lineup was not `unnecessarily suggestive and conducive to irreparable mistaken identification.' (Stovall v. Denno, supra, 388 U.S. 293, 302 [18 L.Ed.2d 1199, 1206].) It is true that in the three color photographs defendant is the only participant wearing a gold shirt and gold sweater, whereas the four other men wore white shirts or white sweaters. In People v. Beivelman. supra, 70 Cal.2d 60, 78 [73 Cal. Rptr. 521, 447 P.2d 913], we held, however, that the fact that appellant wore light-colored pants while the other men wore dark-colored pants did not render that lineup unfair. The clothing worn by defendant was not similar to that described to the police by Mrs. Ward, and each man wore a shirt or sweater dissimilar from each of the others. The participants all appeared to be of a comparable age and of similar build. None had distinctive features. As there was nothing in the conduct of the procedure whereby Mrs. Ward was shown the photographs that was `so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification' (Simmons v. United States, supra, 390 U.S. 377, 384 [19 L.Ed.2d 1247, 1253]), the identification testimony was properly admitted." (Italics added.) (See also Witkin, Cal. Evidence (2d ed. 1974 Supp.) § 905 A-6, p. 593.)