Filed 10/26/23  P. v. Rivera CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>RAYMUNDO RIVERA,<br><br>     Defendant and Appellant. | H049103<br>(Santa Clara County<br>Super. Ct. No. CC632875) |

In 2006, Harry Luman was stabbed during a robbery.  In connection with these crimes, a jury convicted defendant Raymundo Rivera of first degree murder and second degree robbery.  The jury, however, found not true an allegation that Rivera used a deadly or dangerous weapon committing these offenses.  Consequently, as we observed on Rivera's direct appeal, the jury appears to have found Rivera guilty of murder under a felony murder theory.  (*People v. Rivera* (Feb. 23, 2010, H033633) [nonpub. opn.].)[1]  In 2018, the Legislature enacted Senate Bill 1437 (2017-2018 Reg. Sess.) (SB 1437), which, among other things, restricted the felony murder doctrine and permitted resentencing of those previously convicted under the doctrine in certain circumstances.  (See Stats. 2018, ch. 1015, §§ 3-4.)  Rivera subsequently petitioned for resentencing.[2]  The trial court,

_____

[1] Rivera filed a request to take judicial notice of the appellate record in his direct appeal, which this court granted by separate order.

[2] Rivera petitioned for sentencing under former Penal Code section 1170.95.  (Subsequent undesignated statutory references are to the Penal Code.)  Effective June 30, 2022, that section was renumbered section 1172.6.  (Stats. 2022, ch. 58, § 10.)  In discussing the statute, we will use the new section number.

however, denied the petition on the ground that Rivera could have been convicted of murder even as restricted under SB 1437.

We reverse and remand for a new evidentiary hearing because it is unclear whether the correct standard of proof was applied. We also conclude that the trial court abused its discretion in admitting certain hearsay statements, but we leave Rivera's preclusion and sufficiency arguments for the trial court to consider in the first instance. We also reject Rivera's request for reassignment to a different judge on remand.

## I. Background

### A. *The Prosecution*

Like Luman, Rivera was homeless. On June 9, 2006, Rivera and another homeless man, Joe Anthony Silva, attacked and robbed Luman. During the robbery, Luman was stabbed in the neck and chest, and one of the stab wounds pierced Luman's heart and killed him. However, the testimony concerning who stabbed Luman was conflicting, and Rivera was convicted of murder under the felony murder doctrine.

#### 1. The Charges

Rivera and Silva were charged by information with first degree murder and robbery in the second degree as well as manslaughter. The information also alleged that in the commission of the robbery and the murder Rivera "personally used a deadly and dangerous weapon, a(n) knife."

#### 2. The Evidence Presented at Trial

Neither Rivera nor Silva testified at trial. Nor did Amanda R., a close acquaintance of both Rivera and Silva, who was also involved in the robbery. Instead, the prosecution presented several eyewitnesses to the robbery as well as others who spoke to Rivera and Silva afterwards. Several of these witnesses had alcohol or drug abuse problems, and their testimony concerning the robbery, and in particular concerning who stabbed Luman, was conflicting.

2

The prosecution's key witness against Rivera was Blake F., who described himself as an "avid drinker" and admitted that earlier on the day of the incident he had consumed 48 ounces of malt liquor. Blake testified that, from a distance of between 75 and 100 yards, he saw Rivera and Silva attacking Luman while Amanda stood by and watched. Blake initially saw nothing in Rivera's hand and believed that he was punching Luman. Later, however, Blake concluded "it was not punching," but "more or less stabbing." Blake also testified that "when he stopped with the stabbing motion," Rivera went through Luman's pockets.

Another witness, Anthony W., testified that Silva, not Rivera, stabbed Luman. Anthony testified that he was in the alley about 40 feet away from where the fight took place. Anthony saw four men, including Rivera and Silva, jump Luman, punch him, and kick him. In addition, Anthony testified that he saw Silva kneeling over Luman making a stabbing motion like "somebody taking an ice pick and chopping away at . . . a block of ice."

A third witness, Jaime P., also testified that Silva stabbed Luman. Jamie, who admitted to smoking methamphetamine that day, said that he was 30 to 40 feet away from the struggle. Jamie testified as well that he saw Luman with a knife in his left hand and that Rivera grabbed Luman's left wrist as Luman held the knife. In addition, the prosecution submitted to the jury a transcript of an interview with the police in which Jaime said that, after Luman pulled out his knife, Silva took the knife and stabbed Luman with it.

There was also conflicting evidence concerning later events and admissions. One witness, Cynthia R., testified that she saw Rivera, Silva, and Amanda late one evening in a tunnel where Cynthia R. was then living. She said that Amanda was covered in blood and holding a bloody knife, Silva had blood on his clothes, but Rivera's clothing had no blood on it. In addition, Amanda testified that Silva boasted that he had stabbed Luman.

3

At trial, another witness, Bill W., denied that he spoke with Rivera about the Luman murder, but the prosecution presented evidence that during an interview with the police Bill said that Rivera had admitted to stabbing Luman. Similarly, Bill's girlfriend, Cindy B., testified at trial that she did not recall speaking to Rivera about the stabbing, but the prosecution presented evidence that she had told police that Rivera admitted to stabbing Luman.

### 3. Jury Instructions and the Verdict

The jury was instructed on two theories of murder: malice aforethought and felony murder. With respect to felony murder, the jury was instructed that it could convict a defendant even if the defendant did not stab the victim so long as the defendant committed, or aided and abetted in, the robbery, and "intended to commit robbery or intended to aid and abet the perpetrator in committing robbery," among other things. The court also instructed the jury to decide whether the People had proven that defendant personally used a deadly or dangerous weapon during the commission of the murder or burglary.

The jury convicted Rivera of both first degree murder and second degree robbery. However, it found the allegations that Rivera had "personally used a deadly. . . weapon, a knife, . . . to be not true."

### 4. The Appeal

The trial court subsequently sentenced Rivera to an indeterminate term of 25 years to life on the murder charge and a consecutive determinate term of three years on the robbery charge. Rivera appealed, claiming instructional error and that his sentence was miscalculated. A panel of this court rejected Rivera's claim of instructional error but concluded that Rivera's consecutive sentence lacked a sufficient legal basis and ordered the sentence for the robbery conviction stayed under section 654. (*People v. Rivera*, *supra*, H033633.)

In doing so, this court observed that "[a]lmost certainly" Rivera had been found guilty on a felony murder theory. (*People v. Rivera, supra,* H033633.) The jury's verdicts, the court reasoned, show that the jury "found that Silva, not defendant, killed Luman" because "Luman was killed by a knife wound that reached the heart, and the jury found not true the knife-use enhancement allegations for both the robbery and the murder." (*Id.*)

### B.     *The Petition for Resentencing*

In January 2019, Rivera filed a petition for resentencing under SB 1437. After finding that Rivera had made a prima facie case for relief and issuing an order to show cause, the trial court received briefing and held a hearing at which the prosecutor presented testimony from Amanda and a San Jose police officer who testified concerning statements made by Amanda in 2006 and 2008. The trial court denied the petition.

#### 1.     Amanda's 2006 and 2008 Statements to the Police

During the evidentiary hearing, Amanda admitted to having pleaded guilty to armed robbery in connection with Luman's robbery and murder as well as contempt of court for refusing to testify at Rivera's trial. Amanda testified that she did not recall anything about the incident, explaining that "my brain has shut it down and blocked it out." The prosecutor tried to refresh Amanda's recollection by having her review statements that she made to the police in 2006 and 2008. However, Amanda testified that the statements did not refresh her recollection. She explained that Luman's robbery and murder had traumatized her and that, while she did not dispute that she had been interviewed, she did not remember being interviewed. Amanda also said that she was "high on meth" during that period in her life.

The prosecutor asked the court to play portions of Amanda's interviews with police, arguing that they were admissible as "prior inconsistent statements, prior consistent statements, and also past recollection recorded." Defense counsel objected, pointing out that the prosecutor had failed to lay a proper foundation for admission of the

5

interviews as past recollections recorded because Amanda had not testified that the statements were truthful. In addition, counsel objected that the interviews could not be admitted as prior inconsistent statements because Amanda had merely said she did not remember and therefore had not made any statements inconsistent with those during the interviews. The trial court nonetheless allowed the prosecutor to play recordings of Amanda's 2006 and 2008 statements, stating that it was "not receiving this as evidence at this time."

In the 2006 statement, Amanda told the police that Rivera stabbed Luman in the face and that she saw the knife in Rivera's hand. Amanda also said that it was "[b]asically" Rivera's plan to rob Luman.

In the 2008 statement, Amanda said that she sold drugs to Luman earlier on the day of the incident and noticed he had "[a] lot of money." Later a group of seven people, including Rivera and Silva as well as herself, accosted Luman in an alley. After someone in the group demanded Luman's money, Luman and Rivera got into a fight in which Silva participated. Amanda denied seeing Luman pull out a knife, seeing a knife in Rivera's hand, or even seeing anything resembling a stabbing motion. Amanda, however, said that she later saw Rivera with a knife and that he said " 'I can't believe I just did this.' "

After hearing the recordings of her 2006 and 2008 statements, Amanda reiterated that she did not recall the events in question or being interviewed. In addition, when the prosecutor asked whether, based on her tone of voice, she thought that she was trying to be truthful and accurate, Amanda replied, "I can't say yes or no. I was under a lot of drugs." Although the prosecutor continued to press her on this issue, Amanda maintained that she did not know if she had been truthful in her earlier statements. On cross examination, Amanda admitted that, during the period of her life in which the 2006 interview occurred, "I was as high as I possibly could be."

6

Although the People originally had asked to admit Amanda's prior statements as prior inconsistent statements as well as past recollections recorded, in light of Amanda's testimony on the first day of the sentencing hearing, they shifted tactics and in a written memorandum asked the trial court to admit Amanda's testimony solely as a past recollection recorded. The next day, during the second day of the evidentiary hearing, the prosecutor explained that he was "not going to argue that [Amanda's] statements on the witness stand of a failure of recollection are disingenuous. There is really nothing about her demeanor that would suggest, when she testified . . . that she could not recall the specifics of the event or the interviews with the detective, that she was being deceitful or dishonest." Accordingly, the prosecutor informed the court that, rather than "asking . . . to admit her prior statements as inconsistent statements based on a dishonest claim of a failure of recollection," he was "asking the Court to admit her prior statements as past recollection recorded."

Although the trial court relied on Amanda's 2006 statement, it did not rule that the past recollection recorded exception or, indeed, any exception to the hearsay rule applied. Instead, the court stated that "[t]here was no violation of the Confrontation Clause" because Amanda was subject to cross-examination.

### 2. The Trial Court's Order

In a written order, the trial court denied Rivera's petition for resentencing. After discussing the standard of proof, the court determined that Rivera was not entitled to resentencing because he could have been convicted of murder under SB 1437's changed requirements. Although the trial court acknowledged that the evidence concerning who stabbed Luman was "conflicted," based upon its review of the trial transcript and the evidence presented at the post-trial evidentiary hearing, the court nonetheless found that "beyond a reasonable doubt" Rivera "was the person who actually stabbed Luman." The trial court also found that, even if Rivera did not kill Luman, he could be convicted of second degree murder under SB 1437 because "he was an aider and abettor of the murder

7

[who] acted with express malice, i.e., intent to kill." Finally, the court found that Rivera could have been found guilty of murder under current law because he participated in the attack on Luman and "had reckless disregard for human life." The trial court, however, stated that it was "not making a determination of guilt in its ruling."

The order denying resentencing was issued on February 14, 2021, and Rivera filed a timely notice of appeal on February 16, 2021.

## II. Discussion

A. *Standard of Proof*

Rivera argues that the trial court's order denying him resentencing must be reversed because the trial court applied the wrong standard. We agree.

At the time that the hearing was conducted, there was a split of authority concerning the standard of proof under section 1172.6. Some authority held that the trial court should apply a substantial evidence standard, while other authority held that under section 1172.6 "the trial court acts as an independent fact finder" and must "determine beyond a reasonable doubt whether defendant is guilty of murder under a valid theory of murder." (*People v. Garrison* (2021) 73 Cal.App.5th 735, 745 (*Garrison*).) The Supreme Court subsequently vacated the primary authority adopting the substantial evidence standard (*ibid*., discussing *People v. Duke* (2020) 55 Cal App.5th 113, review granted Jan. 13, 2021, S265309, cause transferred and ordered not citable, Nov. 23, 2021), and ordered the case reconsidered in light of Senate Bill No. 775 (2021-2022 Reg. Sess.), which amended section 1172.6 to clarify that trial courts must find defendants guilty of murder *beyond a reasonable doubt* under section 188 or 189. (Stats. 2021, ch. 551, § 2, codified at § 1172.6, subd. (d)(3).)

Although the trial court stated that Rivera was the person who actually stabbed Luman beyond a reasonable doubt, the court later stated that the test was " 'could' and 'beyond a reasonable doubt.' " However, as clarified by both statutory amendment and the case law, under section 1172.6, the trial court *is* tasked with "acting as an independent

8

fact finder, to determine beyond a reasonable doubt whether defendant is guilty of murder under a valid theory of murder." (*Garrison*, *supra*, Cal.App.5th at p. 745; see also § 1172.6, subd. (d)(3) ["At the hearing to determine whether the petitioner is entitled to relief, the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019."].) Moreover, in light of the conflicting evidence concerning who stabbed Luman, the failure to make such a determination was prejudicial. We therefore vacate the trial court's order and remand for a new evidentiary hearing to allow the trial court to apply the correct standard of proof and determine under current law whether Rivera is guilty of murder beyond a reasonable doubt.

B.    *Proceedings on Remand*

Rivera asks that we consider the admissibility of the statements from Amanda presented at the evidentiary hearing, the preclusive effect of the findings made at Rivera's jury trial, and the sufficiency of the evidence presented by the prosecution so that errors allegedly made by the trial court in the previous resentencing do not recur. In light of section 1172.6's instruction that "evidence previously admitted at any prior hearing" may be considered (§ 1172.6, subd. (d)(3)), we address the admissibility of Amanda's statements and conclude that the trial court erred in admitting them.

1.    Amanda's 2006 and 2008 Statements

In admitting Amanda's 2006 and 2008 statements, the trial court implicitly rejected Rivera's objection that they were inadmissible hearsay, but the only justification it offered for doing so was the observation that their admission did not violate the Confrontation Clause. The Attorney General makes no attempt to defend this rationale. Nor does the Attorney General deny that the admission of evidence during resentencing hearings under section 1172.6, subdivision (d) is "governed by the Evidence Code." (§ 1172.6, subd. (d)(3); see also Stats. 2021, ch. 551, § 2 [adding subdivision (d)(3)].)

9

Accordingly, we review whether the trial court abused its discretion in admitting the hearsay statements from Amanda. (See, e.g., *People v. McCurdy* (2014) 59 Cal.4th 1063, 1095.) We conclude that there was an abuse of discretion.

In the trial court, the prosecutor argued that the Amanda's statements were admissible under Evidence Code section 1237, the hearsay exception for past recollections recorded. The Attorney General concedes that the statements "were not admissible under Evidence Code section 1237, as a prior recollection recorded." We accept this concession. Under Evidence Code section 1237, records of a witness's past recollection are admissible if four requirements are met. (Evid. Code, § 1237, subd. (a)(1)-(4).)[3] The third requirement is that "the witness testifies that the statement [she] made was a true statement" of the fact recorded. (*Id*., subd. (a)(3).) Amanda, however, did not testify that her 2006 and 2008 statements were true. Quite the contrary: She repeatedly stated that she could not recall the interviews in which she made those statements. Even more importantly, Amanda said that during this time period she was "under a lot of drugs" and "as high as [she] possibly could be," and she could not say that she was truthful or even doing her best to be truthful when she made the 2006 and 2008 statements. As a consequence, the requirements for the past recollection recorded exception were not satisfied, and Amanda's 2006 and 2008 statements were not admissible under Evidence Code section 1237. (See, e.g., *People v. Simmons* (1981) 123

---

[3] Evidence Code section 1237, subdivision (a) provides: "Evidence of a statement previously made by a witness is not made inadmissible by the hearsay rule if the statement would have been admissible if made by him while testifying, the statement concerns a matter as to which the witness has insufficient present recollection to enable him to testify fully and accurately, and the statement is contained in a writing which: [¶] (1) Was made at a time when the fact recorded in the writing actually occurred or was fresh in the witness' memory; [¶] (2) Was made (i) by the witness himself or under his direction or (ii) by some other person for the purpose of recording the witness' statement at the time it was made; [¶] (3) Is offered after the witness testifies that the statement he made was a true statement of such fact; and [¶] (4) Is offered after the writing is authenticated as an accurate record of the statement."

Cal.App.3d 677, 682-683, abrogation on other grounds recognized by *People v. Cowan* (2010) 50 Cal.4th 401, 468.)

The Attorney General argues that Amanda's statements were instead admissible under Evidence Code section 1235, the hearsay exception for prior inconsistent statements. This exception applies if "a statement made by a witness . . . is inconsistent with his testimony" at a hearing, and the witness is given an opportunity to explain or deny the statement. (Evid. Code, § 1235 [requiring compliance with Evid. Code, § 770]; *id.*, § 770, subd. (a) [requiring opportunity to explain or deny].) At the resentencing hearing, however, Amanda did not deny that Rivera stabbed Luman or that he later admitted to doing so, as she asserted in the 2006 and 2008 statements. Nor did she identify anyone else who stabbed Luman. Instead, she testified that she could not remember what happened the day that Luman was stabbed. Amanda simply could not remember because, she explained, the event was traumatic for her, and "[m]y brain has shut it down and blocked it out." As the Supreme Court has long recognized, "[n]ormally, the testimony of a witness that he or she does not remember an event is not inconsistent with that witness's prior statement describing the event," and therefore prior statements about an event are not admissible under Evidence Code section 1235 where the witnesses do not remember the event. (*People v. Johnson* (1992) 3 Cal.4th 1183, 1219-1220 (*Johnson*); see also *People v. Green* (1971) 3 Cal.3d 981, 988 ["In normal circumstances, the testimony of a witness that he does not remember an event is not 'inconsistent' with a prior statement by him describing that event."].)

The Attorney General points out that inconsistency may be implied if "a witness's claim of lack of memory amounts to deliberate evasion" (*Johnson*, *supra*, 3 Cal.4th at pp. 1219-1220), and he argues that the trial court could have found that Amanda's failure to recall the stabbing of Luman was evasive. But the trial court did not state that it had made such a finding. Nor was it even asked to do so. To the contrary, in the trial court the prosecutor conceded that Amanda's testimony was not evasive. "There is," the

11

prosecutor informed the trial court, "nothing about her demeanor that would suggest, when she testified before your Honor that she could not recall the specifics of the event or the interviews with the detective, that she was being deceitful or dishonest." In fact, the prosecutor expressly disavowed any reliance on the prior inconsistent statement exception: "So *I am not asking the Court to admit her prior statements . . . based on a dishonest claim of a failure of recollection.*" (Italics added.) Instead, the prosecutor relied solely on Evidence Code section 1237's past recollection recorded exception.

Having told the trial court that Amanda was not being evasive and withdrawn their request to apply the prior inconsistent statement exception, the People cannot ask the court now to assume that the trial court silently disagreed with their assessment of Amanda and silently applied the exception despite the withdrawal.

### 2. Issue Preclusion

Rivera also asks the court to consider an issue he raised in the trial court: whether the jury's verdicts in his favor on the dangerous weapon allegations precluded the trial court from finding that he was the actual killer. However, whether jury findings have preclusive effect in subsequent section 1172.6 proceedings depends on a number of factors, including the evidence admitted at the section 1172.6, subdivision (d)(3) evidentiary hearing. (See, e.g., *People v. Arnold* (2023) 93 Cal.App.5th 376, 383-390; *People v. Cooper* (2022) 77 Cal.App.5th 393, 413-416; *People v. Arevalo* (2016) 244 Cal.App.4th 836, 853; see generally *People v. Strong* (2022) 13 Cal.5th 698, 716.) As we are remanding with directions to conduct such a hearing, it would be premature for us to consider the preclusive effect of the jury's verdicts on the dangerous weapon allegations.

### 3. Sufficiency of the Evidence

We leave it for the trial court to consider in the first instance the sufficiency of the evidence of Rivera's guilt under the correct standard of proof and to decide whether Rivera is guilty of murder beyond a reasonable doubt.

D.    *Judicial Bias*

Rivera requests that his case be assigned to a different trial judge on remand on the ground that the court's rulings suggest an appearance of bias.  While Code of Civil Procedure section 170.1 authorizes us to disqualify a trial judge " ' "where a reasonable person might doubt whether the trial judge was impartial [citation]" ' " (*People v. LeBlanc* (2015) 238 Cal.App.4th 1059, 1079), mere error "does not establish bias and normally is not a proper ground for disqualification."  (*Ibid*.)  Finding nothing more here, we decline Rivera's request for reassignment on remand.

## III.  Disposition

The order denying Rivera's section 1172.6 petition is reversed.  This matter is remanded to the trial court with directions to conduct a new evidentiary hearing under current law at which the prosecution shall be required, under section 1172.6, subdivision (d)(3) to "prove, beyond a reasonable doubt," that Rivera "is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019."

_____

BROMBERG, J.

WE CONCUR:

_____

BAMATTRE-MANOUKIAN, ACTING P.J.

_____

DANNER, J.

H049103
*The People v. Rivera*