[No. AO23117. First Dist., Div. One. Jan. 17, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
STEVEN ROGER BROWN, Defendant and Appellant.

**COUNSEL**

Thomas R. Wallraff, under appointment by the Court of Appeal, and Biggam, Christensen and Minsloff for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Robert R. Granucci and Blair W. Hoffman, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

ELKINGTON, J.—A jury found defendant Brown guilty of the crimes of grand theft and burglary, and he admitted serving a recent prior prison term. The trial court thereafter set aside the burglary conviction. He was sentenced to state prison for a three-year aggravated term on the grand theft charge with a one-year enhancement for the prior conviction and prison term. He appeals from the judgment.

It is first contended by Brown that: "The California Constitution precludes a conviction where the only evidence connecting the accused with a crime is a prior statement repudiated by a witness at trial."

In stating the relevant evidence, we follow the rules laid down in *People v. Johnson* (1980) 26 Cal.3d 557, 576-577 [162 Cal.Rptr. 431, 606 P.2d

738, 16 A.L.R.4th 1255], and *Grainger* v. *Antoyan* (1957) 48 Cal.2d 805, 807 [313 P.2d 848]. ■ When a jury's verdict is attacked on the ground that there is no substantial evidence to sustain it, the power of an appellate court *begins* and *ends* with the determination as to whether, on the entire record, there is any substantial evidence, contradicted or uncontradicted, which will support it, and when two or more inferences can reasonably be deduced from the facts, a reviewing court is without power to substitute its deductions for those of the jury. It is of no consequence that the jury believing other evidence, or drawing different inferences, might have reached a contrary conclusion.

The San Lorenzo Lumber Company was located on Cory Street in the City of Santa Cruz. Over the weekend of January 22-23, 1983, an electric generator was stolen from the premises; it appeared to have been removed through a hole in a fence on Cory Street. The generator was predominantly red-orange and white in color, with some black. It weighed about 150 pounds and was of a value in excess of $1,000. And it had a hook or ring on its top to facilitate its transportation.

On Sunday evening, January 23, 1983, a neighbor going to his nearby shop on Cory Street saw 2 men, about 30 or 40 feet from the lumber company's "back gate." Returning soon after, he observed two people carrying what appeared to be "either an electric motor or a generator." They were holding the ends of a pipe which went through "a hook on the top." The men and the machine were seen very clearly in his "headlights." The neighbor continued to observe the men as they walked down Cory Street and entered the premises of 4045-B Cory Street. The neighbor was familiar with the area, he drove down the street "everyday, at least."

The next morning, Monday, January 24, 1983, the neighbor reported his observations to the police, and pointed out the premises at 4045-B Cory Street, that the men carrying the motor or generator had entered.

The 4045-B Cory Street premises were occupied by Ron Barker and his wife Domenica Barker. Defendant Steven Roger Brown was a friend of Ron Barker.

Later on the day of Monday, January 24, 1983, a police officer visited the Barkers' home at 4045-B Cory Street, told Ms. Barker he was investigating a burglary, and asked permission to search the house. The permission was granted, and an unproductive search was made. Told that an electric generator was stolen, she said that she "knew nothing about it," and the officer left the premises.

Soon thereafter Ms. Barker and her husband had a "big fight" in which she was badly beaten. She called her mother and spoke of the recent happenings. Her mother called the police, causing the officer to again visit 4045-B Cory Street.

This time Ms. Barker was more cooperative. She told the officer that on the night of Sunday, January 23, 1983, her husband *and defendant Steve Brown* had carried the generator into the house and, about 10 minutes later, had carried it out again. The interview was unrecorded, but twice during the next few days recorded statements, with her permission, were made.

During the police interviews Ms. Barker was asked to describe the generator she had seen. She said it was "orange and white," and with her arms and hands, correctly described its approximate size. Shown a picture of the stolen generator, she said it had the colors of the one she saw and otherwise resembled it, but that she did not remember the "bars." She also pointed to a radio within the house and said her husband, but not Steve Brown, had stolen it. She insisted "that Steve Brown had nothing to do with stealing the radio," and that "the only thing [the police] could get Steve for was the generator." (Her husband, Ron Barker thereafter pleaded guilty to the radio's theft, i.e., "petty theft with a prior petty theft," a felony violation of Pen. Code, § 666.)

Defendant Brown was thereafter arrested for the burglary of the San Lorenzo Lumber Company, and the theft of its generator.

At defendant Brown's later preliminary examination however, Ms. Barker testified that neither her husband, nor Brown, had brought the generator into the house, and that she had lied to the police. And at Brown's later trial, on her cross-examination, the following question was asked, and answer given.

"Q. And, as a matter of fact, when you were called to testify, and you were sworn and under oath at the preliminary hearing, and you were asked if you ever told Deputy Wildey that you saw Steve Brown help bring a generator into your house, you said, 'no'?

"A. That's right. *I'd been threatened.*" (Italics added.)

At defendant Brown's trial, Ms. Barker continued in her denial that her husband and Brown had brought the generator into the house, or that she had seen it. She admitted that she hated her husband (then her ex-husband) for his treatment of her, but that she had no reason to be angry at Brown. And she said that her accurate description of the stolen generator was just

"a wild stab." And when asked, "You never even saw this generator?" She responded, "Not really."

The prosecution was thereafter permitted to produce the evidence of Ms. Barker's prior inconsistent statements to the police officer, and one of the recordings, as authorized in a proper case by Evidence Code section 1235.*

 It was the repudiated testimony of Ms. Barker that is the subject of the instant contention.

The effect of such repudiated statements of a witness, properly admitted under Evidence Code section 1235, was broadly discussed in *People* v. *Green* (1971) 3 Cal.3d 981 [92 Cal.Rptr. 494, 479 P.2d 998] (q.v.).

They are admissible "to prove the truth of the matters asserted therein" (*id.,* p. 985), and the rule "does not violate the confrontation clauses" of the state and federal Constitutions (*id., passim*).

Defendant Brown, insisting that Ms. Barker's prior inconsistent statements were insufficient *as a matter of law,* to support his conviction, relies heavily upon *In re Miguel L.* (1982) 32 Cal.3d 100 [185 Cal.Rptr. 120, 649 P.2d 703]. That case involved a juvenile court proceeding in which highly prejudicial, but repudiated inconsistent statements, of one who, had formal criminal proceedings been involved, would have been an uncorroborated accomplice to the charged crime. The case effectively applied to juvenile court proceedings the rule of Penal Code section 1111, that *a conviction cannot be had upon the uncorroborated testimony of an accomplice.*

*In re Miguel L.* points out that requirements of due process demand a holding that, even in juvenile court cases, a finding of criminal conduct may *not* be "based solely [on earlier, but repudiated, declarations of an accomplice since it] not only lacks the traditional indicia of trustworthiness, but also comes from an unreliable source" (32 Cal.3d, p. 110). And elsewhere the high court emphasized that its holding was founded upon the truism " 'that the evidence of an accomplice should be viewed with care, caution and suspicion because it comes from a tainted source' " (*id.,* p. 108), lacking any indicia of trustworthiness (*id., passim*).

---

*Evidence Code section 1235 provides: "Evidence of a statement made by a witness is not made inadmissible by the hearsay rule if the statement is inconsistent with his testimony at the hearing and is offered in compliance with Section 770."

Evidence Code section 770 allows such testimony when: "(a) The witness was so examined while testifying as to give him an opportunity to explain or to deny the statement."

Here no contention is made, nor could such a contention reasonably be made, that Ms. Barker was an accomplice to defendant Brown's charged crime.

And in the case at hand we, as did the trial court and jury, observe many indicia of trustworthiness of Ms. Barker's earlier declarations to the police.

While Ms. Barker obviously had a deep hatred for her husband, just as obviously (and concededly) she had none for defendant Brown. Indeed, as to the stolen radio, she took care to point out that Brown was in no way incriminated with it. Her detailed and accurate description of the stolen generator, and her corroborated statement as to when and how it had been brought into her home, added greatly to her then credibility. So also was her prior inconsistent statements' credibility enhanced by the obviously unintended trial exclamation, "I'd been threatened," when asked about one of her earlier repudiated accusations of Brown's complicity in the generator theft. (No contention is made that the threat was from the police or prosecution.)

Moreover the trial jury had an opportunity to compare Ms. Barker's voice-recorded statement of Brown's guilt, with her trial testimony that she had "not really" seen the generator, and that her remarkably accurate description of it to the police, was just a "wild stab."

Concluding that the trial court properly applied Evidence Code section 1235 and the rule of *People* v. *Green, supra,* 3 Cal.3d 981, we discern no merit in Brown's instant contention.

The remaining contention of Brown's appeal is that: "Appellant was improperly sentenced to the aggravated term."

The contention is unsupported by authority. We observe however, that Brown had previously been separately convicted of the crimes of burglary and of receiving stolen property. And we are unpersuaded that the trial court's "diatribe" against appellate courts (which we do not find on the record) somehow taints Brown's sentencing.

The instant contention also, is found invalid.

The judgment is affirmed.

Racanelli, P. J., and Holmdahl, J., concurred.