Filed 7/21/16

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D069936 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SWF1200303) |
| MOURIS M. GHIPRIEL, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Riverside County, Angel M. Bermudez, Judge. Affirmed.

Steven A. Brody, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Peter Quon, Jr. and Anthony DaSilva, Deputy Attorneys General, for Plaintiff and Respondent.

False imprisonment that involves no more in the way of force or menace than is needed to restrain the victim is a misdemeanor. Felony, or aggravated, false

imprisonment requires proof of force greater than is needed to restrain the victim.  Here, the evidence showed defendant Mouris M. Ghipriel, who weighs 240 pounds, kept one of his employees, who weighs approximately 100 pounds, in a very small office and sexually assaulted her.  We reject Ghipriel's contention this record does not support his three felony false imprisonment convictions.  We also reject Ghipriel's contention the trial court erred in admitting testimony from the victim with respect to his attempt to digitally penetrate her.

Accordingly, we affirm Ghipriel's convictions.

FACTUAL AND PROCEDURAL BACKGROUND

A.  Doe's Employment at Ghipriel's Restaurant

In March 2011, Jane Doe was 19 years old and had just graduated from high school.  Doe was five feet tall and weighed 100 pounds.  At that point in time, Doe began working for Ghipriel at a steak house he owned and operated in Hemet, California.  Ghipriel was 54 years old, five feet eight inches tall, and weighed 240 pounds.

Doe began working as a dishwasher at Ghipriel's restaurant.  While washing dishes, Ghipriel would occasionally rub Doe's shoulders or walk by and grab her by her hip.  In May 2011, Doe was promoted from dishwashing to a position as a hostess, where she stood behind a small podium.  On one occasion while Doe was standing at the podium, Ghipriel walked up behind her, put his hand under her V-neck shirt, reached across her chest and grabbed her left breast.  Doe ducked down so that she could get Ghipriel's hand out of her shirt, told Ghipriel to stop and walked away.

Over the next several weeks, Ghipriel made a continuing series of sexually

2

suggestive advances, of varying levels of crudeness, on Doe. As Ghipriel would walk by Doe at the podium when she was bending down to wipe menus or a counter, he would graze her buttocks with his hand; he would do the same as she was standing at different places in the restaurant. In response, Doe would give Ghipriel a dirty look and tell him to stop. On another occasion, after discussing his plan to convert part of the restaurant to a hookah bar and have Doe manage it, Ghipriel went to the bar, had some drinks, came back to the hostess podium and kissed the corner of Doe's mouth, leaving saliva on it.

When Doe asked to be promoted to a server's position where she could earn tips, Ghipriel told her she would have "to do stuff" with him, which she interpreted as sex acts. By way of hand gestures on one occasion and later by way of an express request, Ghipriel asked Doe to perform oral sex on him.

B. False Imprisonment and Sexual Assaults

While Doe was working as a hostess, Ghipriel regularly called her back to meet him in his very small office. At most only two or three people, including Ghipriel, could fit in the office at any given time, and many employees either stood or sat outside the office when talking to Ghipriel while he was in the office.

When called to the office, Doe would try to simply stand in the doorway, but, on a number of occasions, Ghipriel would grab Doe's wrist, pull her into to the office and lock the door. Doe recalled five occasions in which, with the door to his office closed, Ghipriel cornered her in the office with his much larger body, touched her breasts underneath her brassiere, touched her buttocks and attempted to kiss her.

On three occasions, while Ghipriel had Doe pinned against the wall of his office,

3

he exposed his penis and began masturbating; on two of those occasions he ejaculated, once on Doe's shoe and once on the floor. On one occasion, Ghipriel pulled up Doe's shirt and touched her stomach with his penis.

The last occasion on which Ghipriel called Doe into his office occurred on October 31, 2011. After Ghipriel maneuvered Doe against the wall and after trying to pull her pants down, he put his hand down her pants, under her panties and touched the lips of her vagina. According to Doe, Ghipriel was unable to get his hands into her vagina because she pushed him away.

For a number of months, Doe had been telling her friend and her roommate about Ghipriel's sexual assaults. Doe testified that she repeatedly went to Ghipriel's office and endured his sexual conduct because she did not want to get fired. However, following the October 31, 2011 assault, Doe left the restaurant before her shift was over and did not return to work. On November 5, 2011, she went to the local police department and reported what had occurred. After conducting an investigation, police arrested Ghipriel.

C. Trial Court Proceedings

Ghipriel was convicted of three counts of sexual battery (Pen. Code,[1] § 243.4, subd. (a)), three counts of felony false imprisonment (§§ 236, 237, subd. (a)), three counts of indecent exposure (§ 314, subd. (1)), one count of assault with intent to penetrate (§ 220, subd. (a)), and two counts of battery for purposes of sexual arousal (§ 243, subd. (e)(1)). The trial court sentenced Ghipriel to a term of eight years in state

---

[1] All further statutory references are to the Penal Code.

4

prison.

Ghipriel filed a timely notice of appeal.

DISCUSSION

I

In his first argument on appeal, Ghipriel contends none of his false imprisonment convictions were aggravated, and, hence, each false imprisonment conviction should be reduced to a misdemeanor. We reject these contentions.

A. Sufficiency of the Evidence

"When a jury's verdict is attacked on the ground that there is no substantial evidence to sustain it, the power of an appellate court *begins* and *ends* with the determination as to whether, on the entire record, there is any substantial evidence, contradicted or uncontradicted, which will support it, and when two or more inferences can reasonably be deduced from the facts, a reviewing court is without power to substitute its deductions for those of the jury. It is of no consequence that the jury believing other evidence, or drawing different inferences, might have reached a contrary conclusion." (*People v. Brown* (1984) 150 Cal.App.3d 968, 970.)

B. False Imprisonment

Section 236 provides: "False imprisonment is the unlawful violation of the personal liberty of another." Section 237, subdivision (a) provides: "False imprisonment is punishable by a fine not exceeding one thousand dollars ($1,000), or by imprisonment in the county jail for not more than one year, or by both that fine and imprisonment. [Misdemeanor false imprisonment.] If the false imprisonment be effected by violence,

5

menace, fraud, or deceit, it shall be punishable by imprisonment in the state prison. [Felony false imprisonment.]"

"Force is an element of both felony and misdemeanor false imprisonment. Misdemeanor false imprisonment becomes a felony only where the force used is greater than that reasonably necessary to effect the restraint. In such circumstances the force is defined as 'violence' with the false imprisonment effected by such violence a felony." (*People v. Hendrix* (1992) 8 Cal.App.4th 1458, 1462.)

Like Ghipriel, the appellant in *People v. Castro* (2006) 138 Cal.App.4th 137 (*Castro*) relied on the holding and reasoning of *People v. Matian* (1995) 35 Cal.App.4th 480, 485-487 (*Matian*) in arguing that there was insufficient evidence he used the additional force or menace required to establish felony false imprisonment. In *Matian*, the defendant initially sexually abused his victim and, in particular, squeezed her breast with enough force to cause her pain and possible bruising; he then, by way of grabbing her and glaring at her, kept her from leaving the vicinity of his office. The court in *Matian* found these circumstances did not constitute felony false imprisonment because they did not involve the use of a deadly weapon or any express threat of harm. (*Id.* at pp. 486-487.)

In disagreeing with *Matian*, the court in *Castro* stated: "We have trouble understanding the conclusion the Court of Appeal reached in *Matian*. While the opinion does not discuss the underlying sexual crimes, it is clear that the false imprisonment followed immediately after the forcible sexual assaults during which appellant squeezed the victim's breast so hard as to cause her pain and possibly even bruising. Thereafter,

6

the perpetrator yelled at the victim 'nothing happened,' attempting to intimidate her into not reporting the incident. He then told her to wash her face and she took a seat nearby, within view of the perpetrator who was in his office. When the victim attempted to leave, the perpetrator glared at her and got out of his chair as if he was going to approach her. Given the immediately preceding sexual assaults, and the command to her that 'nothing happened,' it is reasonable to conclude the victim was intimidated by the perpetrator. In fact, she testified that she was afraid and did not want him to touch her again. We have no problem with concluding the evidence addressed in the published portion of the opinion supported the conviction for felony false imprisonment by menace, if not violence. Thus, we do not agree with the result in *Matian*, or with appellant's argument that comparison with the facts in *Matian* requires reversal of his conviction for felony false imprisonment." (*Castro*, *supra*, 138 Cal.App.4th at p. 143.)

In *Castro*, the victim was walking to a bus stop on her way to school when the defendant grabbed her by the arm, turned her around and pulled her toward his car. In finding that this was sufficient to establish felony false imprisonment, the court stated: "In the present case, appellant grabbed the victim and turned her around. If that is all that had happened, we would agree with appellant that his conduct amounted only to misdemeanor false imprisonment. But appellant pulled her toward his car, an act more than what was required to stop her and keep her where she was located. . . . [T]he evidence that appellant used force to pull the victim toward his car was sufficient to establish force above that required for misdemeanor false imprisonment." (*Castro*,

7

*supra*, 138 Cal.App.4th at p. 143.)[2]

C.  Analysis

We agree with the court's opinion in *Castro*.  The additional force required for felony false imprisonment, as opposed to misdemeanor false imprisonment, may come in the form, as in *Castro*, of simply pulling a victim toward a location when the victim's liberty has already been violated.  (*Castro*, *supra*, 138 Cal.App.4th at p. 143.)  However, as the court in *Castro* also indicated, such additional and unnecessary force may also arise from sexual assaults suffered by the victim during the course of the defendant's contact with the victim.  (*Ibid.*)  In this regard, like the court in *Castro*, as well as the courts that decided *People v. Islas*, *supra*, 210 Cal.App.4th at pages 125-126, *People v. Wardell*, *supra*, 162 Cal.App.4th at page 1491 and *People v. Aispuro*, *supra*, 157 Cal.App.4th at page 1513, we disagree with the reasoning and result in *Matian*.

Here, a host of circumstances demonstrate that Ghipriel's sexual assaults and conduct support each of his three felony false imprisonment convictions.  Plainly, touching Doe's breasts, masturbating in front of her, rubbing his penis on her stomach, and putting his hands down her pants and touching the lips of vagina, were not needed to restrain or otherwise violate Doe's liberty.  Importantly, Doe was vulnerable in a number

---

[2]      In addition to *Castro*, the *Matian* opinion has been the subject of criticism and disagreement by the courts in *People v. Islas* (2013) 210 Cal.App.4th 116, 125-126, *People v. Wardell* (2008) 162 Cal.App.4th 1484, 1491 and *People v. Aispuro* (2007) 157 Cal.App.4th 1509, 1513.  "An express or implied threat of harm does not require the use of a deadly weapon or an express verbal threat to do additional harm.  Threats can be exhibited in a myriad number of ways, verbally and by conduct."  (*People v. Aispuro*, *supra*, at p. 1513.)

of respects: she was less than half his age, she weighed less than half of Ghipriel's 240 pounds, she was trapped in his small office, and he was her employer at a job she was afraid of losing. In addition to the fact that on at least three separate occasions the sex acts Ghipriel committed involved actual physical contact and Doe in no way consented to them, all the acts were profoundly degrading and demeaning. Given the character of the acts and Doe's vulnerability on so many levels, Ghipriel's sexual conduct no doubt played a material role in maintaining control over her. Thus, in light of all these circumstances, a jury could reasonably conclude that in each instance charged as felony false imprisonment, Ghipriel used force beyond that needed to restrain Doe and hence effected the violation of her liberty by violence within the meaning of section 236, subdivision (a).

## II

In his second argument on appeal, Ghipriel argues the trial court erred in permitting Doe to testify with respect to his intention when he put his hands down her pants and touched the lips of her vagina. We find no error.

A. Doe's Testimony

As we have discussed, at trial Doe testified without objection that on October 31, 2011, Ghipriel called her into his office, trapped her against a wall, and put his hands down her pants and touched the lips of her vagina. Doe testified that when Ghipriel kept sticking his hands down her pants and trying to unbutton her pants, at least twice she told him to stop. The prosecutor then asked Doe: "So was he able, from what you feel, to get his hands inside your vagina?" Doe replied in the negative, and Ghipriel's counsel objected on the grounds the question assumed facts not in evidence. The trial court

9

overruled the objection, and Doe testified Ghipriel was unable to put his hand inside her vagina because she was able to push him away with her arms, though she was scared.

B. Analysis

On appeal, Ghipriel argues the prosecutor's question was improper because it assumed there was evidence he intended to put his hand or fingers in Doe's vagina and that further error occurred when Doe was permitted to testify that she was able to prevent him from doing so.

We find no error. We agree that in describing what occurred both the prosecutor and Doe assumed that Ghipriel intended to digitally penetrate her vagina. However, their assumption was supported by substantial circumstantial evidence in the record. At the time Ghipriel put his hands down Doe's pants, he had trapped his 20-year-old employee in his office, where he had previously subjected her to multiple sexual assaults and advances, including ejaculating on her shoe. In putting his hands down her pants and trying to unbutton them, Ghipriel plainly escalated his conduct and desire for gratification. A fairly reasonable inference to be drawn from the totality of circumstances was that, at that point, Ghipriel intended to digitally penetrate Doe and that he was only prevented from doing because she was able to push him away.[3]

---

[3] Because admission of Doe's testimony with respect to Ghipriel's attempt to penetrate her was proper, counsel's failure to make a more detailed and renewed objection to the testimony did not prejudice Ghipriel and will not give rise to a claim of ineffective assistance of counsel. (See *Strickland v. Washington* (1984) 466 U.S. 668, 695.)

DISCUSSION

The judgment of conviction is affirmed.

BENKE, Acting P. J.

WE CONCUR:


McDONALD, J.


O'ROURKE, J.

11