Filed 8/31/23  P. v. Montervelazquez CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MARVICK DANIEL MONTERVELAZQUEZ,<br><br>    Defendant and Appellant. | B322446<br><br>Los Angeles County<br>Super. Ct. No. TA156193 |

APPEAL from an order of the Superior Court of Los Angeles County, Kelvin D. Filer, Judge.  Remanded with directions.

William Paul Melcher, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and Gary A. Lieberman, Deputy Attorneys General, for Plaintiff and Respondent.

————————————

Everyone acknowledges appellant Marvick Daniel Montervelazquez did not take the breakup with his girlfriend well.  Two weeks after they broke up, appellant waited outside his ex-girlfriend's home for her to return from work.  After she parked her car, he grabbed her from behind in bear hug fashion.  She screamed, kicked, pushed him to escape, and fell to the ground, while appellant held on and pushed her against her will into a car which carried her away with him.

This appeal presents the primary question: Was restraining, struggling with, and pushing and forcing the victim into the car against her will an indivisible course of conduct?  Or were they separate acts for which the trial court could impose and execute separate sentences?  The trial court concluded they were separate divisible criminal acts for which it imposed consecutive sentences.  We disagree and remand to the trial court to stay one of the terms pursuant to Penal Code[1] section 654.

**FACTUAL AND PROCEDURAL BACKGROUND**

I.    *The Events*

After a six-month dating relationship, Rubi S. and appellant became engaged in January 2021.  But throughout the rest of 2021, Rubi broke up and reunited with him several times.  Towards the end of November 2021, she was done with him.  She ended the relationship.  Rubi then blocked appellant's calls after he kept "blowing up" her phone with constant contact.

On December 3, 2021, Rubi left work in Bellflower and drove home to Compton where she lived with her parents and siblings.  She parked her car in front of her neighbor's house and

---

[1]      Undesignated statutory references are to the Penal Code.

2

when she started walking towards her house, she was grabbed from behind by appellant. Rubi said appellant "kind of like hugged me from behind." Rubi told him to let her go and said she did not want to be with him. She started screaming and fighting back. He held onto her. She fell to the ground two times as she struggled.

Rubi pushed and kicked to fight back as appellant forced her into the front passenger seat of a black Honda Civic. Appellant then sat next to her. An unknown male was driving. Rubi told appellant she wanted to go home. He told her, "I'm not trying to hurt you."

One of Rubi's neighbors saw her park her car in front of his house, heard her screaming, and called Rubi's mother, Guadalupe Z. Guadalupe had heard random yelling outside the house. After the neighbor called her, Guadalupe went outside and saw Rubi's parked car, but no Rubi.

Guadalupe called Rubi's phone several times. She received no answer. Then Rubi answered and said, "Ma, Ma." Rubi was crying and sounded in pain. Guadalupe heard struggling. Guadalupe kept calling her back, but no one picked up. About two hours later appellant answered Rubi's phone. Guadalupe threatened to call the police unless appellant brought Rubi home. Appellant said he would do so. He gave the phone to Rubi and told her to tell her mother she was okay. Rubi did so. Appellant hung up and kept Rubi's phone.

After a brief stop at appellant's place of employment and a while driving around Wilmington and Long Beach, appellant, Rubi, and the other man drove to the Marriott Hotel in Long Beach. Rubi estimated two hours had passed. A scared Rubi and appellant walked into the hotel together. There was another call

between appellant and Guadalupe. Appellant asked whether Guadalupe planned to call the police.

Rubi called her mother briefly and told her she was at the hotel. Rubi tried unsuccessfully to leave the hotel room twice. Each time appellant grabbed her and brought her back. At around 5:00 a.m. after they had consensual sex and appellant fell asleep, Rubi left the room. She called her family. Guadalupe and Rubi's brother Kevin picked Rubi up in the Marriott Hotel parking lot. Rubi was crying a lot.

Around 8:00 a.m., Rubi, Guadalupe, and Kevin went to the police station to report what happened. Rubi suffered a scratch on her neck and bruises on her arms. Appellant was arrested the same day near Rubi's home.

II.    *The Charges and Convictions*

On April 6, 2022, the People filed an amended information in the Los Angeles Superior Court charging appellant with kidnaping in violation of section 207, subdivision (a); and domestic violence in violation of section 273.5, subdivision (a). Also alleged were several aggravating sentencing factors pursuant to California Rules of Court, rule 4.421. The kidnaping count referred to appellant's act of forcing Rubi into the car against her will; the domestic violence count referred to their physical struggle as she was forced into the car. (Appellant was also charged with felony false imprisonment in violation of sections 236 and 237 for events at the hotel, but the jury acquitted him of that count, so we do not discuss it.)

On June 3, 2022, a jury found appellant not guilty of kidnaping and instead found him guilty of felony false imprisonment with violence in violation of section 237, subdivision (a), a lesser included offense of kidnaping. The jury

4

also found appellant not guilty of domestic violence and instead found him guilty of misdemeanor spousal battery in violation of section 243, subdivision (e)(1), a lesser included offense of domestic violence.

### III.    *The Sentencing*

On July 19, 2022, the trial court sentenced appellant to the high term of three years on the felony false imprisonment charge. It also ordered him to serve one consecutive year in the county jail on the misdemeanor spousal battery.  A 10-year stay away order was also imposed.  Appellant asked the court to stay the sentence on the battery because it was part of the indivisible course of conduct in forcing Rubi into the car.  The court declined to do so, stating: "And I note that the defense did ask that that time either run concurrent or that it be stayed pursuant to Penal Code section 654. [¶] However, the court's position is that that one year should be consecutive, because, as I recall, the physical contact which resulted in the battery conviction preceded and was before any of the asportation which warrants the false imprisonment or the movement to the vehicle which warranted the false imprisonment.  So it was separate conduct, a separate time. [¶] I think, as [it] relates to those two charges, the defendant had an opportunity to think about the consequences of each one of the acts. [¶] And so, therefore, the court is not going to find that the time should be stayed pursuant to Penal Code section 654."  This timely appeal followed.

## DISCUSSION

**The Trial Court Erred When It Declined to Stay One of the Sentences Pursuant to Section 654.**

I.    *Applicable Law*

Section 654 provides in part, "An act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision." (§ 654, subd. (a).)  Section 654 thus bars multiple punishments for a single act that violates more than one criminal statute, and for multiple acts where those acts comprise an indivisible course of conduct incidental to a single criminal objective and intent. (*People v. Williams* (2013) 57 Cal.4th 776, 780–781.)  Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor.  If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one.  (*Neal v. State of California* (1960) 55 Cal.2d 11, 19.)

On the other hand, if the defendant entertained multiple criminal objectives that were independent and not incidental to each other, he "may be punished for each statutory violation committed in pursuit of each objective," even though the violations were otherwise part of an indivisible course of conduct. (*People v. Harrison (*1989) 48 Cal.3d 321, 335 (*Harrison*).)

II.    *Standard of Review*

Errors in the application of section 654 are corrected on appeal regardless of whether the point was raised by objection in

6

the trial court or assigned as error on appeal. (*People v. Perez* (1979) 23 Cal.3d 545, 459, fn. 3.)

Whether the facts and circumstances reveal a single intent and objective within the meaning of section 654 is generally a factual matter; nevertheless, the applicability of the statute to conceded facts is a question of law. (*Harrison*, *supra*, 48 Cal.3d at p. 335; *People v. Corpening* (2016) 2 Cal.5th 307, 312.) Put another way, if many offenses were incident to one objective, an individual may be punished for any of the offenses but not for more than one. *People v. Goode* (2015) 243 Cal.App.4th 484, 492; *People v. Barrios* (2021) 61 Cal.App.5th 176, 178 (*Barrios*).) The trial court's findings on the question of whether section 654 applies in a given case must be upheld on appeal "if there is any substantial evidence to support them." (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1143; accord *People v. Brents* (2012) 53 Cal.4th 599, 618.) The trial court's determination is viewed in the light most favorable to the judgment and the existence of every fact the trial court could reasonably have deduced from the evidence is presumed. (*Jones,* at p. 1143.)

III.   *Analysis*

Whether appellant can be imprisoned for both false imprisonment by violence and battery calls for an interpretation of section 654, which says an "act" punishable in different way by different legal provisions shall be punished but in no event shall the "act" be punished under more than one provision. We must interpret the statutory word "act." Within the meaning of section 654, was this course of conduct but a single "act?" This question of statutory interpretation is a question of law. (*Barrios, supra,* 61 Cal.App.5th at p. 179.)

False imprisonment is the unlawful violation of the personal liberty of another.  (§ 236.)  If the false imprisonment is effected by violence, menace, fraud, or deceit, it shall be punishable by imprisonment in the state prison.  This is felony false imprisonment.  (§ 237, subd. (a).)

Force is an element of both felony and misdemeanor false imprisonment.  Misdemeanor false imprisonment becomes a felony only where the force used is greater than that reasonably necessary to effect the restraint.  In such circumstances, the force is defined as "violence."  (*People v. Hendrix* (1992) 8 Cal.App.4th 1458, 1462; *People v. Ghipriel* (2016) 1 Cal.App.5th 828, 833.)  The additional force required for felony false imprisonment, as opposed to misdemeanor false imprisonment, may come in the form of simply pulling a victim toward a location when the victim's liberty has already been violated.  (*Ghipriel,* at p. 834.)

Battery is any willful and unlawful use of force or violence upon the person of another.  (§ 242.)  Here, we find the battery was incident to appellant's false imprisonment by violence.  Because the false imprisonment became false imprisonment by violence due to the physical fight and pushing between appellant and Rubi, which also constituted the battery, appellant could only be punished for one of the offenses.

*People v. Beamon (*1973) 8 Cal.3d 625, 637) is on point.  There, victim truck driver Ashcraft got out of his truck to make a delivery.  When he returned, Beamon entered the passenger side with a gun.  The two drove a distance and then began to fight.  Ashcraft fled.  The episode lasted about 20 minutes and covered 15 blocks.  (*Id.* at pp. 630–631.)  The jury convicted Beamon of kidnaping "for the purpose of robbery and for the commission of that very robbery.  We are compelled to the conclusion as a

8

matter of law that on the record here both crimes were committed pursuant to a single intent and objective, i.e., to rob Ashcraft of the truck or its contents." (*Id*. at p. 639.) The court concluded that Beamon could be punished for only one of the two crimes. (*Id.* at pp. 639–640.)

We, too, are compelled to conclude that as a matter of law both crimes were committed pursuant to a single intent and objective, i.e., to physically control Rubi in order to take her away against her will. The jury found that appellant intended to falsely imprison Rubi by violence so the battery inflicted on her (whether it be the physical scuffle between them, or appellant's pushing Rubi into the car) is part and parcel of the false imprisonment. The course of conduct cannot be divided into separate and distinct events where, as here, there was no event or occurrence or time lapse that, midstream, marked a transition and redirected appellant to embark on a new criminal objective. (*Barrios, supra*, 61 Cal.App.5th at pp. 179–180.) Appellant intended to physically restrain Rubi's liberty and he did. This was an indivisible course of conduct for which he can be punished only once.

We disagree with the trial court's conclusion that after the initial bear hug, appellant had the opportunity to reflect upon his conduct and release Rubi, thereby morphing their physical fighting and pushing into an act separate from the false imprisonment. It is axiomatic that anyone can always change their mind during the commission of an offense. Having time to withdraw is not a factor in the analysis. Discerning one intent and one objective is the test. Even if time to reflect were in the analysis, the testimony here shows there was no transition, demarcation, or time lapse in the confrontation that turned this

9

chain of events into two separate and distinct criminal episodes with two separate intents and objectives. There was no testimony that when Rubi fell down during the fight, their struggle against each other paused until she got up, thus giving appellant time to reflect. He restrained Rubi against her will from the very start with the bear hug grab and continued to restrain her physically as she struggled against him. The sequence of events establishes that appellant had one objective – to force Rubi to go with him, even if it meant physically battering and pushing her into the car. There is no evidence appellant started with one objective and switched to another objective midstream or even that he started with two objectives. Because we conclude this was one indivisible course of conduct, one of the sentences should have been stayed. We therefore remand for a new sentencing hearing.

Effective January 1, 2022, Assembly Bill No. 518 (2021–2022 Reg. Sess.) modified section 654 and gave trial courts discretion to choose which sentence to execute and which sentence to stay. Former section 654 mandated execution of the longest sentence. (*People v. Mani* (2022) 74 Cal.App.5th 343, 379.)

Appellant was sentenced on July 19, 2022. Because the trial court has the discretion to decide which sentence to stay, we remand to the trial court to make that decision. When part of a sentence is stricken on review, on remand for resentencing a full resentencing as to all counts is appropriate, so the trial court can exercise its sentencing discretion in light of changed circumstances. (*People v. Buycks* (2018) 5 Cal.5th 857, 893.) On remand, the trial court may revisit all its sentencing choices. (*Ibid.*)

As appellant will be resentenced, we do not decide his second contention that the trial court erred in imposing the aggravated term for false imprisonment by violence without first determining whether he was entitled to the low term presumption under section 1170, subdivision (b). We also decline to address appellant's contention that his counsel provided ineffective assistance of counsel in not asking for imposition of the low term. On remand, the trial court may address these issues as may be appropriate.

## DISPOSITION

The matter is remanded for a new sentencing hearing.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


STRATTON, P. J.

We concur:



WILEY, J.



VIRAMONTES, J.

11