Filed 12/14/23  P. v. Austin CA1/5

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br> ADRIAN DION AUSTIN,<br><br>      Defendant and Appellant. | A166352<br><br><br>(Solano County Super. Ct. No. FCR360151) |

Adrian Dion Austin appeals from an order of probation entered after a jury convicted him of felony evasion of an officer with willful disregard for safety (Veh. Code, § 2800.2, subd. (a); count one),[1] misdemeanor driving under the influence of alcohol (§ 23152, subd. (a); count two), and misdemeanor driving with a blood-alcohol content at or above 0.08 percent (§ 23152, subd. (b); count three).  Austin challenges the sufficiency of the evidence supporting his conviction on count one and maintains the trial court erred by declining to give a jury instruction on a purported lesser included offense.  We affirm.

### BACKGROUND

### A.

Late on July 31, 2021, California Highway Patrol Officer Sage Birdseye observed the car Austin was driving traveling

---

[1] Undesignated statutory references are to the Vehicle Code.

1

more than 90 miles per hour on Interstate 80. Birdseye, who was in uniform and a marked patrol car, activated his emergency lights to conduct a traffic stop. Austin's car initially slowed. Although Birdseye's partner gave commands (via the public address system) to take the next exit, Austin did not exit the freeway. Instead, he accelerated away from the patrol car.

Birdseye pursued Austin with the patrol vehicle's lights and siren activated. But Austin continued driving on the freeway at speeds more than 100 miles per hour. In doing so, he cut off one car—forcing it to brake to avoid a collision. And, as Austin weaved in and out of traffic during the high-speed pursuit, he nearly struck additional cars.

Austin exited onto Highway 12, where he continued to drive over 100 miles per hour away from the patrol car. As he approached two cars traveling side by side on the two-lane highway, he had to slow significantly to avoid a collision. Austin then followed one of those cars very closely until it pulled partially onto the shoulder. Austin then passed both cars—by straddling the middle-lane line—and accelerated back to around 100 miles per hour.

Austin eventually stopped, in a left turn lane, at a red light. Birdseye exited his patrol car, attempting to conduct a "high-risk stop." But Austin ran the red light, turning left from Highway 12 onto Marina Boulevard. Birdseye returned to his patrol car and continued the pursuit.

After running the red light, Austin reduced his speed significantly to "around the speed limit," but continued to ignore the patrol car's lights and siren, as well as repeated commands to "pull over." During this portion of the pursuit, Austin continued to commit traffic violations, including running a stop sign. Eventually, after the pursuit had persisted for more than 10 minutes, Austin ran over at least one spike strip (placed by the Fairfield Police Department), which deflated one of his tires.

2

As Austin approached the Solano County jail, Birdseye's partner ordered, via the public address system, "[p]ull over into the jail" and "[m]ake a left turn." A few minutes later, the pursuit ended when Austin drove into the jail's parking lot and parked his car in a parking spot. The entire pursuit lasted more than 15 minutes and was captured on the patrol vehicle's dash camera. The video, which was played for the jury, corroborates Birdseye's testimony.

On detaining Austin, Birdseye joked that there was no need to transport Austin to the jail since they were already there. Austin responded, "That was the whole purpose."

After Austin was read (and waived) his *Miranda v. Arizona* (1966) 384 U.S. 436 rights, he was asked why he did not pull over. Austin explained, "when I seen the lights I just kept on going because basically I already knew I was going to jail," in part because he had a suspended driver's license. He "wanted to stop" but thought, "fuck it. I'm just going to be going to jail anyway." Austin also said that he wanted to finish his cigarettes before going to jail. He also suggested that the car he was driving, which belonged to his mother, would have been towed or impounded had he pulled over immediately.

When asked how his car was working, Austin said, "Drives ok. I got away from you guys for a minute." Austin asked Birdseye, "Did you know that I was running from you?" Birdseye said, "Yes. Did you know you were running from me? Cops with lights and sirens?" Austin replied, "I seen the lights."

During his conversation with Austin, Birdseye observed objective signs and symptoms of alcohol intoxication, including red and watery eyes, slurred speech, and the strong odor of alcohol. Chemical breath testing later revealed that Austin's blood-alcohol content was approximately 0.28 percent.

3

**B.**

Defense counsel relied on Austin's post-pursuit statements to argue that the prosecution failed to meet its burden of proving, beyond a reasonable doubt, that Austin fled with the specific intent to evade the officers.

The jury convicted Austin on all three counts and found true an allegation, as to counts two and three, that Austin's blood-alcohol content was at or above 0.15 percent (§ 23578). After finding true an allegation that Austin suffered a prior driving under the influence conviction within 10 years (§§ 23540, 23546), the trial court suspended imposition of sentence and placed Austin on formal probation for a term of three years.

## DISCUSSION

**A.**

Austin argues that his conviction for felony evasion must be reversed because there is no substantial evidence that he fled with the requisite specific intent. We disagree.

**1.**

When faced with a substantial evidence challenge, "the court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence - - that is, evidence which is reasonable, credible, and of solid value - - such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Johnson* (1980) 26 Cal.3d 557, 578; accord, *Jackson v. Virginia* (1979) 443 U.S. 307, 318-319.) We do not reweigh the evidence, resolve conflicts in the evidence, or reevaluate witness credibility. (*People v. Jones* (1990) 51 Cal.3d 294, 314.) The standard of review is the same when the prosecution relies on circumstantial evidence. (*People v. Thomas* (1992) 2 Cal.4th 489, 514.)

4

Section 2800.2, subdivision (a), makes it unlawful for a driver to "flee[] or attempt[] to elude a pursuing peace officer in violation of Section 2800.1 [if] the pursued vehicle is driven in a willful or wanton disregard for the safety of persons or property." In turn, section 2800.1 provides (in relevant part): "(a) Any person who, while operating a motor vehicle and *with the intent to evade*, willfully flees or otherwise attempts to elude a pursuing peace officer's motor vehicle, is guilty of a misdemeanor punishable by imprisonment in a county jail for not more than one year if all of the following conditions exist: [¶] (1) The peace officer's motor vehicle is exhibiting at least one lighted red lamp visible from the front and the person either sees or reasonably should have seen the lamp. [¶] (2) The peace officer's motor vehicle is sounding a siren as may be reasonably necessary. [¶] (3) The peace officer's motor vehicle is distinctively marked. [¶] (4) The peace officer's motor vehicle is operated by a peace officer . . . and that peace officer is wearing a distinctive uniform." (§ 2800.1, subd. (a), italics added.)

Thus, misdemeanor and felony evasion (§§ 2800.1, 2800.2) both require proof of specific intent to evade. The two offenses are distinguished only by the fact that section 2800.2 requires the pursued car be driven with "willful or wanton disregard for the safety of persons or property." (§§ 2800.1, 2800.2; *People v. Weddington* (2016) 246 Cal.App.4th 468, 489.)

**2.**

In maintaining that no substantial evidence supports the jury's implicit finding that he fled with the intent to evade Birdseye, Austin cites the undisputed evidence that the pursuit ended at the Solano County jail. He also relies on his responses to Birdseye's questions, which suggest that he fled, in part, because he knew he was going to jail but wanted to finish his cigarettes and avoid his mother's car being towed. Austin asserts

5

that the only reasonable inference from this evidence is that the jail was his intended destination all along.

That is far from the only inference that can be drawn from the evidence. After all, Austin did not pull into the jail parking lot until the pursuit had been ongoing for over 15 minutes and at least one of his car tires had deflated—making further attempts to evade the officers futile. In fact, Austin's statements themselves establish that he fled with the intent to evade Birdseye—*at least until* he smoked his cigarettes and arrived at a safe location for his mother's car. Austin's argument appears premised on the assumption that, to be convicted of felony evasion, he had to intend to evade officers permanently or during every moment of the pursuit. He cites no authority for this proposition.

The video evidence of the chase—especially the high-speed portion, which shows Austin slowing and then driving away from Birdseye (while weaving in and out of traffic) at speeds exceeding 100 miles per hour—and Austin's admissions that he saw the patrol car's lights, had been "running," and had "got away from [Birdseye] for a minute", constitute substantial evidence that Austin fled with the specific intent of evading Birdseye. (See *People v. Brown* (1984) 150 Cal.App.3d 968, 970 ["[W]hen two or more inferences can reasonably be deduced from the facts, a reviewing court is without power to substitute its deductions for those of the jury. It is of no consequence that the jury believing other evidence, or drawing different inferences, might have reached a contrary conclusion."].)

**B.**

Next, Austin contends that the trial court erred by failing to instruct sua sponte on the offense of failing to comply with the lawful order of a peace officer (§ 2800), which he claims is a lesser

6

included offense.[2]  After reviewing the instructional question de novo (*People v. Licas* (2007) 41 Cal.4th 362, 366), we conclude he is wrong.

## 1.

A trial court is required to instruct on lesser included offenses, even without a request, if substantial evidence raises a question as to whether all the elements of the charged offense are present.  (*People v. Huggins* (2006) 38 Cal.4th 175, 215.)  Our Supreme Court has established two tests for determining whether a crime is a lesser included offense: the elements test and the accusatory pleading test.  (*People v. Gonzalez* (2018) 5 Cal.5th 186, 197.)  "Under the elements test, one offense is another's 'lesser included' counterpart if all the elements of the lesser offense are *also* elements of the greater offense.  [Citation.]  Under the accusatory pleading test, a crime is another's 'lesser included' offense if all of the elements of the lesser offense are also found in the *facts alleged* to support the greater offense in the accusatory pleading."  (*Ibid.*)

## 2.

Here, because Austin agrees that the charging allegations for count one generally track the statutory language of section 2800.2, subdivision (a), we apply the elements test.  (See *People v. Licas, supra*, 41 Cal.4th at p. 366.)

The crime of failing to comply with the lawful order of a peace officer is not a lesser included offense of evading an officer with willful disregard for safety because only the former offense requires the existence of a lawful order.  (See §§ 2800, subd. (a), 2800.2, subd. (a); cf. *People v. Fuentes* (2022) 78 Cal.App.5th 670, 678 ["[n]othing expressed in . . . section 2800.1 or 2800.2 . . .

---

[2] The jury was instructed on the lesser included offense of misdemeanor evading a peace officer.  (§ 2800.1, subd. (a); CALCRIM No. 2182.)

requires a lawful order"]; *id.* at pp. 679–680.)[3]  The Legislature's distinction makes sense.  When a driver attempts to evade a pursuing officer's car, under the conditions provided by either section 2800.1 or section 2800.2, the potential for injury to persons and damage to property is high regardless of the lawfulness of the traffic stop.

In his reply brief, Austin concedes:  "When a law enforcement officer initiates an illegal traffic stop, the driver may – without running afoul of the law – stop their vehicle, comply with the officer's commands, and then successfully argue in court that the traffic stop was not supported by reasonable suspicion. They may *not*, however, refuse to stop entirely.  This is true because the text of section 2800.1 does *not* require that the law enforcement officer initiating the traffic stop was doing so for a lawful purpose."  (Italics added.)  In other words, the charged offense *can* be committed without necessarily violating section 2800.  (Cf. *People v. Reed* (2006) 38 Cal.4th 1224, 1227 [" '[I]f a crime cannot be committed without also necessarily committing a lesser offense, the latter is a lesser included offense within the former' "].)  The charging allegations in count one of the information also make no mention of a lawful order, signal, or direction.

Accordingly, we conclude that the crime of failing to comply with the lawful order of a peace officer (§ 2800, subd. (a)) is not a lesser included offense of evading a peace officer with willful disregard for safety (§ 2800.2, subd. (a)).  The trial court did not

---

[3] Section 2800, subdivision (a), provides:  "It is unlawful to willfully fail or refuse to comply with a *lawful* order, signal, or direction of a peace officer . . . when that peace officer is in uniform and is performing duties pursuant to any of the provisions of this code, or to refuse to submit to a lawful inspection pursuant to this code."  (Italics added.)

8

err in failing to instruct the jury sua sponte on the former offense.

## DISPOSITION

The judgment is affirmed.

BURNS, J.

WE CONCUR:

SIMONS, ACTING P.J.
CHOU, J.

*People v. Austin* (A166352)